**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 15, 2014

# In the Court of Appeals of Georgia

A14A0730. FROST v. THE STATE.

BARNES, Presiding Judge.

Gary Glen Frost appeals from the denial of his plea in former jeopardy. Frost was tried for Driving Under the Influence of Alcohol to the extent that it was less safe for him to drive, OCGA § 40-6-391 (a) (1) (DUI less safe); striking a fixture, OCGA § 40-6-272; and open container, OCGA § 40-6-253. After the jury reached a unanimous verdict on two counts, but was deadlocked on the remaining count, over Frost's objection, the trial court granted a mistrial on all three counts. Frost contends on appeal that the trial court erred in failing to grant his request to accept the jury's unanimous verdicts on the two counts of the three count accusation where the jury was hung only on one count. He also asserts that the trial court erred in admitting evidence of two prior DUI convictions under OCGA §§ 24-4-417 and 24-4-404 (b). Following our review, we reverse the denial of Frost's plea in bar as to the two

decided counts. We also reverse the trial court's ruling on the admissibility of the prior DUI convictions.

1. The record reflects that on June 24, 2012, at approximately 2:48 a.m., the concierge at the condo complex where Frost lived heard a "loud bang,"which he believed was caused by a car running into one of the entrance gates at the condominium. He observed from a security monitor that the gate was damaged and called police when it appeared that a vehicle was leaving the scene. Each condominium resident's vehicle is equipped with an electronic identification decal, and when he checked the monitor, the concierge saw that the car belonged to Frost. He continued to observe the car on the monitors and saw that it eventually entered the parking deck through a visitor's gate. When the concierge went to investigate, he observed Frost sitting in the driver's seat in the parked car, with the engine and lights still on, and music playing. Frost appeared to be asleep.

When the responding officer arrived, he also observed the damaged gate and that Frost was sitting in the driver's seat with "his head . . . slumped over his chest as if he was sleeping." He further observed that "all of the windows were rolled down. There was loud music playing, and the car was still running." The officer ran the license plate and identified Frost as the owner of the car. Based on his observations

2

that Frost smelled of alcohol, had glassy and bloodshot eyes, and had urinated on himself, the officer suspected that Frost was intoxicated and requested that Frost perform an Alco-Sensor test. Frost refused, and he also refused to perform any field sobriety tests, after which he was arrested and later charged by accusation with DUI, striking a fixture and open container.

The case proceeded to trial on June 17, 2013 and the jury started its deliberation at the end of evidence on June 18th. The jury did not reach a verdict on the first day, so deliberations continued into the next day. During the second day of deliberations the jury had several questions, including whether they could get a copy of the trial court's charge and the protocol for operation of the video recorder. The trial court also recharged the jury on the open container law. As deliberations continued, the trial court received a note from the jury stating, "five/one on one charge. How long do we deliberate?" The trial court brought the jury in and gave them an *Allen*[1] charge and directed the jury to continue their deliberations "for about thirty to forty-five minutes."

Before the jury was reconvened in the courtroom, Frost indicated that he would object to the trial court granting a mistrial on the counts on which the jury had

---

[1] See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896).

3

reached a verdict on, and requested that "their verdict be read into the record, just for purposes of appeal as to the two counts that they reached a verdict on." The trial court denied his request and stated that "[i]f there is a mistrial, there is going to be a mistrial on all counts." It further instructed that, "once the jury comes [into the courtroom,] I'm going to read the note on the record and ask them if there's been any change of their minds. If there has not, I'm going to declare a mistrial."

The jury reconvened in the courtroom, at which time the trial court read another note from the jury that stated, "not-guilty person stated they will not change their mind. We cannot reach a verdict on DUI. We are dead-locked, five, dash, one." When asked, the foreman then stated that the jury had reached a unanimous decision on two of the counts. The trial court asked if they were able to reach a unanimous decision on the "whole case . . . on all the counts," and the foreman responded that they had not. The trial court then declared a mistrial on all three counts, and dismissed the jury.

Frost filed a plea in former jeopardy and moved for the dismissal of the two counts on which the jury had reached a verdict — striking a fixture and open container. After a hearing, the trial court denied the motion, essentially agreeing with

4

the State's position and finding a "manifest necessity" for the mistrial absent a completed verdict form signed by the foreperson.[2]

1. On appeal, Frost contends that the trial court erred in granting a mistrial as to the two counts upon which a unanimous verdict was reached. We agree.

In this case,

> [w]e find that jeopardy attached when the jury was seated and sworn and that [Frost] was entitled to receive any verdict reached by that jury. Further, unless manifest necessity existed for granting a mistrial as to the counts decided by the jury, double jeopardy bars any retrial on those counts. The [S]tate bears the "heavy" burden of showing such manifest necessity where, as here, a mistrial is granted over the defendant's objection.

(Citations and punctuation omitted.) *Bair v. State*, 250 Ga. App. 226 (551 SE2d 84) (2001). "The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion." (Citation and punctuation omitted.) *Wilson v. State*, 229 Ga. App. 455 (494 SE2d 267) (1997).

---

[2] The court's clerk indicated that there was no verdict form docketed in the system, and while it was unclear what happened to the verdict form, it is undisputed that it was not signed by the foreman.

The State argues that manifest necessity was demonstrated because there was no verdict form in the case, and thus no evidence that a verdict was returned. Certainly, "[a] manifest necessity to declare a mistrial may exist under urgent circumstances, such as where an impartial verdict cannot be reached" *Bair*, 250 Ga. App. at 227. In this case, however, the note from the jury indicated was deadlocked on the DUI count, but the jury foreman stated in open court that a unanimous verdict had been reached on the other counts. Frost requested that the verdict be published for the record, but the trial court denied his request and stated its intention to declare a mistrial when the jury was reconvened. Other than the fact that the jury was unable to reach a unanimous verdict on the DUI count, there is no other indication that there existed a manifest necessity for a mistrial, or that the trial court had so determined.

Although the trial court found that there had been no verdict in the case,

> [v]erdicts shall have a reasonable intendment, and shall receive a reasonable construction, and shall not be avoided unless from necessity. The presumptions are in favor of the validity of the verdict of a jury, and if possible a construction will be given that will uphold it. Where a verdict may, by a reasonable construction, be understood, and a legal judgment can be entered thereon, it is sufficient.

(Citations and punctuation omitted.) *Jackson v. Houston*, 200 Ga. 399, 400-401 (1) (37 SE2d 399) (1946). Likewise, although much was made of the absence of the verdict form,

> [w]e know of no law which requires the verdict to be written upon any particular paper, and we are not cited to any decision or statute to that effect. Where it is held that while the better practice is that the verdict shall be written upon the initial pleading, dated, and signed by one of the jury as the foreman, none of these details are essential to a legal verdict. . . . Verdicts acquire their legality from return and publication.

(Citations and punctuation omitted.) *Martin v. State*, 73 Ga. App. 573, 578 (4) (37 SE2d 411) (1946).

> Accordingly, in this case

> [b]ecause the trial court could easily have followed the less drastic alternative of accepting the jury's verdict on the decided counts and declaring a mistrial only on the . . . undecided count, we find that no manifest necessity existed for granting a mistrial as to the counts decided by the jury. Accordingly, [as the retrial of the two counts would constitute double jeopardy] the trial court abused its discretion in granting a mistrial on the charges of [striking a fixed object and open container.]

7

(Citations and punctuation omitted.) *Johnson v. State*, 256 Ga. App. 730, 732 (1) (569 SE2d 625) (2002). See also *Bair,* 250 Ga. App. at 227.

Thus, we reverse the trial court's order as to the denial of Frost's plea in bar on the striking a fixed object and open container counts.

2. Although in Division 1 we reversed the trial courts denial of Frost's plea in bar on the striking a fixture and open container counts, he faces retrial on the DUI count. Thus, the admissibility of the similar transactions is likely to occur on retrial. We will therefore address it here.

The State filed a notice of intent to introduce evidence of Frost's two prior DUI convictions.[3] Frost contends that the trial court erred in admitting the transactions because in the prior DUI convictions he had also refused sobriety tests, and thus no relevant evidence could be imputed from the similar transactions to the present case. We agree.

---

[3] Under the new Evidence Code, the admission of evidence of "other crimes, wrongs, or acts" at trials conducted after January 1, 2013, is governed by OCGA § 24-4-404 (b). See Ga. L. 2011, p. 99 § 101. Frost was tried in June 2013, thus our new Evidence Code applied to his trial.

"Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible." (Citations and punctuation omitted.) *Joiner v. State*, 265 Ga. App. 395, 397 (2) (593 SE2d 936) (2004).

Under Georgia's new Evidence Code,

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-404 (b). Under the old Evidence Code, Georgia courts also permitted introduction of evidence of prior DUI convictions to show course of conduct and bent of mind. See *Steele v. State*, 306 Ga. App. 870, 873 (2) (703 SE2d 5) (2010); *Wade v. State*, 295 Ga. App. 45, 47-48 (670 SE2d 864) (2008). However, under the new Evidence Code,"course of conduct" and "bent of mind" are no longer acceptable bases for admitting similar transaction evidence. *Johnson v. State*, 292 Ga. 22, 25 (2), n. 3 (733 SE2d 736) (2012).

OCGA § 24-4-417, which specifically provides for the introduction of DUI similar transaction evidence, provides that,

9

evidence of the commission of another violation of Code Section 40-6-391 on a different occasion by the same accused shall be admissible when . . . [t]he accused refused in the current case to take the state administered test required by Code Section 40-5-55 and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident.

OCGA § 24-4-417 (a) (1). The statute further provides that: "This Code section shall not be the exclusive means to admit or consider evidence described in this Code section." OCGA § 24-4-417 (c). Thus, evidence of prior DUIs may also be considered under OCGA § 24-4-404 (b).

In this case, the trial court held a pretrial hearing and ruled over Frost's objection that the two prior DUI's were admissible for the limited purpose of proving knowledge. In both of the prior transactions, as in the present case, Frost refused to take any sobriety tests, and in the second transaction, his car was parked in the parking lot of a business complex at four in the morning, "music blasting," and Frost was asleep behind the wheel. Frost pled guilty to both DUIs. At the trial, the arresting officers testified as to the circumstances of the similar transactions.

Frost contends that the evidence of intent or knowledge is not relevant because these issues are not elements of DUI less safe, which is a general intent crime, and

10

that there is no requirement of "knowledge that one is driving while under the influence." See *Prine v. State*, 237 Ga. App. 679, 680 (2) (a) (515 SE2d 425) (1999) (to establish DUI, the State must prove (1) driving; (2) after consuming alcohol; (3) to the degree one is less safe). We agree.

OCGA § 24-4-417 (a) (1) provides that prior DUI evidence is admissible when the defendant, as was the case here, "refused in the current case to take the state administered test required by Code Section 40-5-55." It further provides that the evidence must then be "relevant to prove knowledge, plan, or absence of mistake or accident." Id. Under this provision, if

> the defendant took and failed the [state-administered] test in the prior DUI and the defendant refused the test in the subject case, [and] if the defendant at trial attempts to suggest that he did not take the test because he did not understand it, or he did not know that he could take a test, or that he would never take such a test, [then] the prior DUI in which the defendant took and failed the test would be admissible to prove knowledge, plan or absence of mistake or accident.

Paul S. Milich, Ga. Rules of Evidence §11:16 (2013-2014). Here, Frost did not provide an explanation or excuse at trial for his refusal to take the state-administered tests in the present case. Moreover, Frost refused to take the state-administered tests

11

in the prior DUIs as well. Thus, OCGA § 24-4-417 (a) would not apply under the facts of this case to demonstrate knowledge, plan or absence of mistake or accident.

Nor would the prior DUI convictions be admissible to demonstrate "knowledge" under OCGA § 24-4-404 (b). See OCGA § 24-4-417 (c) ("This Code section shall not be the exclusive means to admit or consider evidence described in this Code section.") As this Court explained in *Jones v. State*, 326 Ga. App. 658, 664 (1) (b) (757 SE2d 261) (2014),

> DUI is a crime of *general*, not specific, intent. In a crime of general intent, the "intent" required is proved through proof of the commission of the act itself. In a DUI [less safe] case the act consists of (1) driving, (2) after consuming alcohol to the extent that one is (3) a less safe driver. There is no proof of intent beyond proof of the act. To prove DUI, the State need not prove intent to commit the crime. . . . Admission of the similar transaction evidence as proof . . . [of knowledge] that drinking alcoholic beverages made him a less safe driver did not elucidate or throw light upon whether, in this instance, he committed the same crime again; no culpable mental state was required.

(Emphasis supplied) Id. at 664-665 (1) (b).

Accordingly, because the evidence of Frost's prior DUIs was not admissible for the purposes put forth, the trial court abused its discretion in so finding.

*Judgment reversed. Boggs and Branch, JJ., concur.*

12