297 Ga. 296
FINAL COPY

S14G1767. THE STATE v. FROST.

Blackwell, Justice.

This case concerns the meaning of paragraph (a) (1) of OCGA § 24-4-417 ("Rule 417"), which provides:

> In a criminal proceeding involving a prosecution for a violation of Code Section 40-6-391, evidence of the commission of another violation of Code Section 40-6-391 on a different occasion by the same accused shall be admissible when . . . [t]he accused refused in the current case to take the state administered test required by Code Section 40-5-55 and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident . . . .

Gary Frost was charged with driving under the influence of alcohol to the extent that he was less safe to drive, see OCGA § 40-6-391 (a) (1), and at the time of his arrest, he refused to submit to a state-administered breath test required by OCGA § 40-5-55 (a). The State gave notice of its intent to present evidence at trial that Frost had driven under the influence of alcohol on two prior occasions. Frost objected to this evidence, but the trial court determined that it was relevant to prove knowledge and, therefore, would be admissible under Rule 417 (a) (1). Frost appealed, and the Court of Appeals disagreed with the trial court, finding that the evidence was not relevant to prove knowledge. See Frost v. State, 328

Ga. App. 337, 342-344 (2) (761 SE2d 875) (2014). We issued a writ of certiorari to consider whether the Court of Appeals misconstrued Rule 417 (a) (1). We conclude that the Court of Appeals did misconstrue the statute, and we reverse its judgment as to the admissibility of evidence that Frost had driven under the influence of alcohol on the two prior occasions.

The record in this case shows that the concierge at a condominium complex in Cobb County heard a loud noise early on the morning of June 24, 2012, and upon looking at a security monitor, he saw that a car had struck an entry gate and was proceeding into the complex. The concierge called 911, and he then went in search of the car. When he found it, he observed that Frost was in the driver's seat, the engine was running, the windows were down, and music was playing loudly. Three police officers arrived on the scene shortly thereafter, and they confirmed that the car was damaged in a way consistent with it having struck the entry gate. The officers observed that Frost still was in the driver's seat, and they took notice that he was wearing no shirt and drinking from a bottle of wine. The officers detected a strong odor of alcohol, and they repeatedly asked Frost to exit the car. Frost, however, did not comply with these requests and instead appeared oblivious to the fact that police officers were

2

attempting to speak with him.[1] Frost eventually acknowledged the officers and exited the car, but he refused to perform any field sobriety tests or an alcosensor breath test. The officers insisted pursuant to OCGA § 40-5-55 that Frost submit to a chemical test to detect the presence of alcohol, but he refused. Frost was arrested and charged with driving under the influence of alcohol to the extent he was less safe, among other offenses.

The State proposed to present evidence at trial that Frost had driven under the influence of alcohol in Cobb County on two occasions in 2009. On both occasions, Frost refused state-administered tests to detect the presence of alcohol. And on one of these occasions, Frost was found in the early morning hours sleeping in the driver's seat of a parked car with music "blasting" from the car speakers, circumstances remarkably similar to the circumstances of this case. As a result of the 2009 incidents, Frost was convicted of two counts of driving under the influence of alcohol.

---

[1] After viewing a video recording of the encounter between Frost and the officers, the trial judge commented that Frost was "one of the most uncooperative persons I've seen in a long time." The judge also said that Frost did not appear to even comprehend that the men standing around his car were, in fact, uniformed police officers.

As we noted earlier, the trial court determined that this evidence would be admissible under Rule 417 (a) (1) because it was relevant to show knowledge, but the Court of Appeals disagreed. In its opinion, the Court of Appeals adopted a narrow view of the "knowledge, plan, or absence of mistake or accident" that may be proved with evidence admitted under the statute. To identify the circumstances in which evidence of driving under the influence on other occasions might be relevant to show "knowledge, plan, or absence of mistake or accident," the Court of Appeals looked to the commentary of Professor Paul S. Milich, 328 Ga. App. at 343 (2), who has written that Rule 417 (a) (1) was enacted to address a "specific situation":

> [W]hen the defendant took and failed the [state-administered] test in the prior DUI and the defendant refused the test in the subject case, if the defendant at trial attempts to suggest that he did not take the test because he did not understand it, or he did not know that he could take a test, or that he would never take such a test, the prior DUI in which the defendant took and failed the test would be admissible to prove "knowledge, plan, or absence of mistake or accident."

Paul S. Milich, Ga. Rules of Evidence § 11:16 (2014-2015). The Court of Appeals then noted that the record in this case did not show that Frost likely would offer any explanation or excuse at trial for his failure to take the state-

4

administered test in 2012, and in any event, Frost had refused on both occasions in 2009 to take the state-administered tests. 328 Ga. App. at 343 (2). Consequently, the Court of Appeals concluded, Rule 417 (a) (1) "would not apply under the facts of this case to demonstrate knowledge, plan[,] or absence of mistake or accident." Id. The Court of Appeals, we conclude, took too narrow a view of the purposes for which evidence may be admitted under the statute.

In 2011, our General Assembly enacted a new Evidence Code, of which Rule 417 is a part. Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when our courts consider the meaning of these provisions, they look to decisions of the federal appeals courts construing and applying the Federal Rules, especially the decisions of the Eleventh Circuit. See Parker v. State, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015). Some other provisions of the new Evidence Code were carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code. See Bradshaw v. State, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015). But Rule 417 was not borrowed from the Federal Rules of Evidence, and it was not carried over from our old Evidence Code. It is an original creation of the new Evidence

Code, and to understand its meaning, we cannot just look to a body of already existing precedents.

Instead, we must fall back upon the usual principles that inform our consideration of statutory meaning. We recently summarized a number of those familiar and settled principles in this way:

> A statute draws its meaning, of course, from its text. When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant, and so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

Chan v. Ellis, 296 Ga. 838, 839 (1) (770 SE2d 855) (2015) (citations and punctuation omitted). With these principles in mind, we now proceed to examine the words and context of OCGA § 24-4-417 (a) (1), starting with another section of the new Evidence Code that covers some of the same ground as Rule 417.

In a DUI prosecution, evidence of other occasions on which the accused has driven under the influence may be admitted by way of two sections of the

6

new Evidence Code. One, of course, is Rule 417, and the other is OCGA § 24-4-404 (b) ("Rule 404 (b)"). In relevant part, Rule 404 (b) provides:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Rule 404 (b) is not limited to DUI prosecutions, and it is not limited specifically to evidence that the accused drove under the influence on other occasions. Rather, Rule 404 (b) permits the admission in cases of all sorts of evidence of "other acts" relevant to any fact of consequence to the determination of the action,[2] so long as the evidence is not offered to prove "the character of a person in order to show action in conformity therewith."

Just as it did in this case with Rule 417, the Court of Appeals in <u>Jones v. State</u>, 326 Ga. App. 658, 664-665 (1) (b) (757 SE2d 261) (2014) ("<u>Jones I</u>"), took a narrow view of Rule 404 (b), at least as it applies in DUI prosecutions. We granted certiorari in that case to consider the meaning of Rule 404 (b), and

---

[2] According to OCGA § 24-4-401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

7

in <u>State v. Jones</u>, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015) ("<u>Jones II</u>"), we reversed <u>Jones I</u>. As we explained in <u>Jones II</u>, Rule 404 (b) is "an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence."[3] We specifically addressed the admissibility in a DUI prosecution under Rule 404 (b) of evidence of prior occasions on which the accused had driven under the influence, and we explained that such evidence might properly be admitted to show "awareness that drinking caused him to be a less safe driver in order to explain why, after being stopped by police, he attempted to mitigate his physical condition by concealing and minimizing the amount of alcohol that he had consumed."[4] Id. at 162 (2).

Unlike Rule 404 (b), Rule 417 applies only in DUI prosecutions, and it only concerns the admissibility of evidence that the accused drove under the

---

[3] Unlike Rule 417, Rule 404 (b) was borrowed from the Federal Rules of Evidence. For that reason, we looked in <u>Jones II</u> to cases in which the federal courts had construed and applied Federal Rule 404 (b).

[4] In this case, after the Court of Appeals decided that Rule 417 did not permit the admission of evidence that Frost had driven under the influence on other occasions, it relied on <u>Jones I</u> and held that the same evidence would not be admissible under Rule 404 (b) either. See <u>Frost</u>, 328 Ga. App. at 343 (2). Because we conclude that this evidence is admissible under Rule 417, we need not consider whether it also might be admitted under Rule 404 (b). But we note that, given its reliance on <u>Jones I</u>, the Rule 404 (b) analysis of the Court of Appeals in this case is not sound.

8

influence on other occasions.[5] Moreover, Rule 417 (a) (1) applies only when the accused refused at the time of his arrest to take a state-administered test required by OCGA § 40-5-55, and it authorizes evidence of driving under the influence on other occasions only to the extent that such evidence is relevant to prove any one of four facts: "knowledge, plan, or absence of mistake or accident." Although Rule 417 (a) (1) may have a far more limited application than Rule 404 (b), it too is a "rule of inclusion." Indeed, the presumption of admissibility in the limited circumstances in which Rule 417 (a) (1) applies appears even

---

[5] In its entirety, Rule 417 provides as follows:

(a) In a criminal proceeding involving a prosecution for a violation of Code Section 40-6-391, evidence of the commission of another violation of Code Section 40-6-391 on a different occasion by the same accused shall be admissible when:

(1) The accused refused in the current case to take the state administered test required by Code Section 40-5-55 and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident;

(2) The accused refused in the current case to provide an adequate breath sample for the state administered test required by Code Section 40-5-55 and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident; or

(3) The identity of the driver is in dispute in the current case and such evidence is relevant to prove identity.

(b) In a criminal proceeding in which the state intends to offer evidence under this Code section, the prosecuting attorney shall disclose such evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that the prosecuting attorney expects to offer, at least ten days in advance of trial, unless the time is shortened or pretrial notice is excused by the judge upon good cause shown.

(c) This Code section shall not be the exclusive means to admit or consider evidence described in this Code section.

9

stronger than the presumptive admissibility of evidence of other acts under Rule 404 (b). After all, Rule 404 (b) says that evidence of other acts "may . . . be admissible," but Rule 417 (a) (1) speaks of evidence that "shall be admissible."[6] See also Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence at 217 (3d ed. 2015) (Rule 417 "contains a presumption in favor of the admission of this evidence, noting that, in the cases where the statute applies, prior driving under the influence offenses 'shall' be admitted").

The words and context of Rule 417 show — just as the Court of Appeals has suggested — that Rule 417 (a) (1) was adopted to address a problem of proof in a "specific situation." That specific situation, however, is not as limited as the singular, peculiar situation that the Court of Appeals has described: a case in which the accused refused a state-administered test required by OCGA § 40-5-55, *and* in which the accused offers evidence at trial to suggest that his refusal

---

[6] OCGA § 24-4-403 ("Rule 403") provides:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have no occasion in this case to decide whether Rule 403 applies to evidence that "shall be admissible" under Rule 417. Cf. Jones II, 297 Ga. 163 (3). The Court of Appeals did not base its decision on Rule 403, and the parties do not make any argument about Rule 403 in their briefs. Accordingly, we leave questions about the extent to which Rule 403 applies to Rule 417 evidence for another day.

10

is attributable to a lack of knowledge, misunderstanding, inadvertence, accident, or mistake, *and* in which the State has evidence not only that the accused has driven under the influence on other occasions, but also that the accused on those same occasions actually was asked to submit and did submit to a state-administered test, *and* in which the State offers that evidence of driving under the influence on other occasions to rebut the suggestion of the accused by showing that his refusal in the present case was not, in fact, owing to a lack of knowledge, misunderstanding, inadvertence, accident, or mistake. See Frost, 328 Ga. App. at 343 (2) (citing Professor Milich). No doubt, Rule 417 (a) (1) would apply in that peculiar situation, but it is not limited to that situation.

In the first place, the plain terms of Rule 417 (a) (1) limit its application only to cases in which the accused has refused to take a state-administered test required by OCGA § 40-5-55, and it says nothing about the extent to which the reasons for the refusal are in dispute. In contrast, Rule 417 (a) (3) is limited explicitly to cases in which "[t]he identity of the driver is in dispute." Second, Rule 417 (a) refers simply to "evidence of the commission of another violation of Code Section 40-6-391 on a different occasion," not "evidence that the accused submitted to a state-administered test on another occasion" or "evidence

11

of the commission of another violation of Code Section 40-6-391 on a different occasion on which the accused was asked to submit, and did submit, to a state-administered test."

Finally, Rule 417 (b) suggests strongly that Rule 417 (a) (1) is not as limited as the Court of Appeals has proposed. Rule 417 (b) requires the prosecuting attorney to give notice to the accused of the intent to offer Rule 417 (a) evidence, and as a default requirement — subject to exception for "good cause shown" — such notice must be given "at least ten days in advance of trial."[7] This default requirement presupposes that prosecuting attorneys routinely and usually will know "at least ten days in advance of trial" that Rule 417 (a) evidence might be needed. That, however, is a highly questionable presupposition to the extent that it concerns Rule 417 (a) (3) evidence, because Rule 417 (a) (3) is expressly limited to cases in which "[t]he identity of the driver is in dispute," something that often will not be known to the prosecution until the time of trial. So, the presupposition must be largely with reference to Rule 417 (a) (1) and (2) evidence. Just as Rule 417 (a) (1) is limited to cases in

---

[7] For "good cause shown," the trial court may shorten the time in which notice must be given or excuse pretrial notice altogether. OCGA § 24-4-417 (b). But the default rule is that notice must be given ten days before trial.

which the accused refused altogether to take a state-administered test and the evidence of driving under the influence on other occasions is offered to prove one of four particular facts, Rule 417 (a) (2) concerns cases in which the accused "refused . . . to provide an adequate breath sample for the state administered test" and the evidence of other occasions is offered to prove one of the same four facts. There is no reason to think that Rule 417 (a) (2) is broader or narrower in scope than Rule 417 (a) (1); they simply concern different, but like, circumstances that present similar problems of proof. And so, if Rule 417 (a) (1) — and by logical extension, Rule 417 (a) (2) — were limited to the peculiar sort of situation described by the Court of Appeals, then the presupposition of Rule 417 (b) would have little basis.

We conclude that the "specific situation" that Rule 417 (a) (1) was enacted to address is precisely that situation identified explicitly in the text of Rule 417 (a) (1): a case in which "[t]he accused refused . . . to take the state administered test required by Code Section 40-5-55." Regardless of whether the accused disputes the reasons for his refusal, such a situation presents special problems of proof for the prosecution. The elements that the State generally must prove

beyond a reasonable doubt in a DUI case are specified in OCGA § 40-6-391 (a):[8]

> A person shall not drive or be in actual physical control of any moving vehicle while:
> (1) Under the influence of alcohol to the extent that it is less safe for the person to drive;
> (2) Under the influence of any drug to the extent that it is less safe for the person to drive;
> (3) Under the intentional influence of any glue, aerosol, or other toxic vapor to the extent that it is less safe for the person to drive;
> (4) Under the combined influence of any two or more of the substances specified in paragraphs (1) through (3) of this subsection to the extent that it is less safe for the person to drive;
> (5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended; or
> (6) . . . [T]here is any amount of marijuana or a controlled substance . . . present in the person's blood or urine, including the metabolites and derivatives of each or both . . . .

When the accused submits to the state-administered test as required by OCGA § 40-5-55, the test results alone may establish a presence of alcohol, marijuana, or a controlled substance sufficient to prove the conditions identified in OCGA § 40-6-391 (a) (5) or (6). And even if those conditions are not shown, the test

---

[8] When the accused was driving a "commercial motor vehicle," the prosecution instead may prove the elements identified in OCGA § 40-6-391 (i). And when the accused was under the age of 21 at the time of the offense, the State may prove the elements set forth in OCGA § 40-6-391 (k) (1).

14

results at least may prove for the purposes of OCGA § 40-6-391 (a) (1), (2), (3), or (4) that the accused was under the influence of an intoxicant to some extent, although it will remain for the State to prove that the influence of the intoxicant was enough to actually impair the ability of the accused to drive safely.[9]

When an accused refuses the required test, his refusal generally is admissible, see OCGA § 40-6-392 (d), and a trier of fact may infer from such a refusal that, if the accused had submitted to the test, it would have shown some presence of an intoxicant. See Bravo v. State, 249 Ga. App. 433, 434-435 (2) (548 SE2d 129) (2001). Such an inference, however, is permissive, not mandatory, see Crusselle v. State, 303 Ga. App. 879, 883 (2) (b) (694 SE2d 707) (2010), and even in the absence of any evidence from the accused to explain or excuse his refusal, the trier of fact may decline to draw any inference at all. If the trier of fact elects to draw the inference, its weight is indeterminate and left to the discretion of the trier of fact. Cf. Leverett v. State, 254 Ga. 691, 691-692 (2) (333 SE2d 609) (1985) (weight to be given to a permissive inference of consciousness of guilt from evidence of flight is left to the discretion of the

---

[9] As to proof of impairment, test results may provide a basis for an expert witness to opine about the likelihood and extent of such impairment. See, e.g., McMullen v. State, 316 Ga. App. 684, 689 (1) (730 SE2d 151) (2012).

15

jury). And standing alone, a refusal permits an inference only that a prohibited intoxicant was present to some degree, not that the intoxicant worked the impairment required under OCGA § 40-6-391 (a) (1), (2), (3), or (4), see Baird v. State, 260 Ga. App. 661, 663 (1) (580 SE2d 650) (2003) ("Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does *not* support an inference that the defendant was an impaired driver." (Emphasis in original)), or that alcohol was present in a sufficient concentration for the purposes of OCGA § 40-6-391 (a) (5). See, e.g., Costin v. State, 269 Ga. App. 632, 634 (605 SE2d 73) (2004) ("Although Costin's refusal to submit to chemical testing may create an inference that the test would show the presence of alcohol, it does not establish that his blood-alcohol concentration was greater than 0.08.").

Proof that the accused on prior occasions had driven under the influence of the same or a similar intoxicant may strengthen substantially the inference about the presence of an intoxicant. This is so because, as we noted in Jones II, it might properly be inferred from evidence of prior occasions on which the accused had driven under the influence that the accused had an awareness that his ingestion of an intoxicant impaired his ability to drive safely. Such

16

awareness, in turn, would offer an explanation for why the accused refused the test on this occasion, namely, that he was conscious of his guilt and knew that the test results likely would tend to show that he was, in fact, under the influence of a prohibited substance to an extent forbidden by OCGA § 40-6-391 (a). See Jones II, 297 Ga. at 159 (2). Prior occasions on which the accused was arrested and charged with driving under the influence also could permit an inference in some circumstances that the accused had acquired knowledge about the means by which law enforcement officers determine whether and to what extent a driver is under the influence of an intoxicant, and such awareness likewise might help to explain a refusal in the present case to submit to a test. In either event, the trier of fact might well conclude that an adverse inference about the presence of an intoxicant is more warranted than it otherwise would be, and the trier of fact might decide that the inference can bear more weight than it otherwise could. This is true when the accused refused the required tests on the prior occasions, and it is true even when the accused offers no evidence to explain or excuse his refusal on this occasion.

In this case, the trial court did not abuse its discretion when it found that the evidence that Frost had driven under the influence on two prior occasions

was "relevant to prove knowledge" and would be, therefore, admissible under Rule 417 (a) (1). Both prior occasions involved driving under the influence of alcohol, as does this case. On both prior occasions, Frost was asked to submit to a state-administered test required by OCGA § 40-5-55, as in this case. And on one of the prior occasions, Frost was found in circumstances remarkably similar to those in which he was found in this case. The Court of Appeals erred when it held that Rule 417 (a) (1) would not permit the admission of such evidence, and for that reason, the judgment of the Court of Appeals is reversed.

Judgment reversed. All the Justices concur.

Decided June 15, 2015.

18

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 337.

Barry E. Morgan, Solicitor-General, Deborah M. Tatum, Emily B. Keener, Assistant Solicitor-Generals, for appellant.

George C. Creal, Jr., for appellee.