**FIRST DIVISION**
**MILLER, P. J.,**
**DOYLE, C.J., and RAY, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2016**

# In the Court of Appeals of Georgia

A16A0430. KIM v. THE STATE.

MILLER, Presiding Judge.

Following a traffic accident in Dekalb County, Robert Jin Kim was convicted of DUI-less safe (OCGA § 40-6-391), and failure to maintain his lane (OCGA § 40-6-48). He now appeals, arguing that the trial court erred by admitting evidence of his DUI conviction from 2010 under OCGA § 24-4-403 ("Rule 403"). After review, we affirm.

According to the evidence adduced at trial,[1] in December 2010, a Gwinnett County police officer was on routine patrol at about 1:40 a.m. when he observed a car stopped at a traffic light. The driver, later identified as Kim, appeared to be asleep or passed out and did not move during the traffic light's cycle. The officer approached

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)

the car, knocked on the glass, and awoke Kim. The officer could smell alcohol on Kim's breath and in the car, and Kim's speech was mumbled and slurred. After Kim agreed to participate in field sobriety tests, he exhibited four out of six clues on the HGN test, five out of eight clues on the walk-and-turn test, and three clues on the one-legged stand. When asked, Kim agreed to take an alco-sensor test, which was positive for alcohol. Based on these results, the officer arrested Kim and read him the Implied Consent notice. Kim consented to a state-administered breath test. Kim's alcohol concentration was .125 grams, well above the .08 legal limit.

On a different occasion, on August 22, 2014, another officer responded to an accident in which a car had struck the median wall in Dekalb County. He approached the car and knocked on the window. When the officer spoke to Kim, he immediately smelled alcohol. He asked if Kim had been drinking, and Kim responded that he had not. Kim was able to recite his ABC's and engage in conversation, and his face and speech were normal. Kim's eyes, however, were bloodshot and watery and he appeared sleepy. The officer asked Kim to participate in field sobriety tests, and Kim agreed. Kim exhibited all six clues in the HGN test. Kim, however, was unable to complete the walk-and-turn test due to an ACL injury. After conducting the tests, the officer again asked Kim if he had been drinking, and this time Kim admitted that he

2

had a couple of shots after he finished work. Based on the HGN test results, Kim's bloodshot and watery eyes, his inability to complete the filed sobriety tests, the accident, Kim's admission that he had been drinking, and the smell of alcohol, the officer concluded that Kim was intoxicated and he placed Kim under arrest. The officer read Kim the Implied Consent notice, and Kim refused to take a state administered breath test.

Prior to trial, the State notified Kim that it intended to introduce evidence of his 2010 DUI conviction. Kim objected on the grounds that the evidence was inadmissible as a "prior act," and that the prejudicial effect outweighed any probative value under Rule 403. The trial court concluded that the evidence was admissible, specifically finding that the probative value outweighed any prejudicial effect because it explained Kim's understanding of his choice to take or refuse the field sobriety and state-administered chemical tests. The trial court, however, agreed to issue a limiting instruction to the jury on the use of this evidence.

After the State referred to Kim's 2010 conviction during opening statements, but before the State's first witness testified about the 2010 incident, the trial court instructed the jury that Kim's prior conviction was admissible only to show that he had knowledge of the potential consequences of participating in filed sobriety tests

3

and the state-administered chemical test, and that it was not to be used to determine

Kim's character for committing DUI.[2] In closing argument, the State again mentioned

Kim's prior conviction, stating, "[a]nd he says he has an ACL injury, but we know

---

[2] The trial court instructed the jury as follows:

[s]ometimes evidence is presented for a limited purpose and in that case that may be only for that particular purpose. In this trial there may be evidence presented that the Defendant was previously convicted of driving under the influence of alcohol. You may consider that evidence solely for the purpose of determining whether or not the circumstances of that prior case showed that the Defendant had knowledge of the potential consequences of participating in the field sobriety exercises and in taking the State administered breath test. You may not consider such evidence for any other purpose. Specifically, you may not consider such evidence for concluding that the Defendant is of a character of committing the offense of driving under the influence of alcohol. You are to consider all of the evidence in this case in reaching your decision and in doing so you may find that the Defendant's refusal, if any, to participate in some of the requested tests was for some reason other than his prior experience. That is for you alone to determine what weight, if any, you give the Defendant's prior experience, but any such or any consideration of such evidence must be strictly – limited to the question of relevant knowledge, as I previously explained.

what happened the last time he performed the field sobriety evaluations . . . . He performed them and he was arrested. And he knows that. So his ACL injury may be more in line with the fact that he knows he's going to get arrested for DUI, just like last time." In charging the jury after the close of evidence, the trial court instructed the jury that Kim's prior conviction could be considered for the limited purpose of knowledge, and specifically instructed them not to infer character to commit the offense of DUI.

In his sole enumeration of error, Kim argues that the trial court erred in admitting evidence of his prior DUI conviction, even though such convictions are generally admissible under OCGA § 24-4-417 ("Rule 417"), because the facts of the prior conviction were more prejudicial than probative under Rule 403. We discern no error.

"[T]he admission of evidence is a matter which rests largely within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." (Citation omitted). *Barclay v. State*, 306 Ga. App. 766, 766 (702 SE2d 907) (2010).

Under Georgia law, evidence of a prior DUI charge "shall be admissible" in a DUI prosecution where the defendant refused to take the state-administered chemical

test to show "knowledge, plan, or absence of mistake or accident."[3] See OCGA § 24-4-417 (a) (1); see also *State v. Frost*, 297 Ga. 296, 301 (773 SE2d 700) (2015). In upholding the admission of prior DUI convictions under Rule 417, the Georgia Supreme Court specifically declined to address the issue presented in this case – that is, whether the balancing test in Rule 403 applies to the admission of evidence under Rule 417 (a) (1).[4] *Frost*, supra, 297 Ga. at 301 n.6.

Under OCGA § 24-4-403, which mirrors Federal Rule of Evidence 403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403; see also *Curry v. State*, 330 Ga. App. 610, 614 (1), n.8 (768 SE2d 791) (2015). Presuming without deciding that Rule 403

---

[3] The Supreme Court noted that Rule 417 (a) (1) applies only in DUI prosecutions and even then only where the defendant refused to take the state-administered test. *Frost*, supra, 297 Ga. at 301. The Supreme Court further noted that admission of evidence under Rule 417 was less expansive than the admission of prior acts under OCGA 24-4-404 (b). Id. at 301-02.

[4] Ordinarily, we would look to the comparable evidentiary provision under federal law for guidance. See *Frost*, supra, 297 Ga. at 299. There is no comparable federal provision for § 24-4-417. Id. at 300, n.3

applies to evidence admitted under Rule 417 (a) (1), the trial court properly admitted the evidence.[5]

As this Court has explained,

the plain meaning of OCGA § 24-4-403's text makes clear that the trial court may only exclude relevant evidence when its probative value is substantially outweighed by one of the designated concerns. Indeed, the Eleventh Circuit has described Rule 403 as an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility. Obviously, the reason for such caution is that relevant evidence in a criminal trial is inherently prejudicial, and, as a result, Rule 403 permits exclusion only when unfair prejudice substantially outweighs probative value. The primary function of Rule 403, then, is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

(Punctuation and footnotes omitted.) *Williams v. State*, 328 Ga. App. 876, 879 (1) (763 SE2d 261) (2014). The Georgia Supreme Court has cautioned that "there is no mechanical solution for this balancing test. Instead, a trial court must undertake in each case a considered evaluation of the proffered justification for the admission of such evidence and make an independent determination"of the prejudicial and

---

[5] See Paul Milich, Ga. Rules of Evidence § 11:16 n.8 (2015) (discussing the applicability of Rule 403 to Rule 417 and opining that Rule 403 should apply).

probative value. *State v. Jones*, 297 Ga. 156, 163 (3) (773 SE2d 170) (2015). This evaluation "calls for a common sense assessment of all the circumstances surrounding the [prior conviction], including . . . overall similarity" between the two offenses. (Citation omitted.) *Jones v. State*, 335 Ga. App. 563, 564 (782 SE2d 466) (2016).

The trial court here admitted Kim's prior DUI conviction because it was relevant to the issue of Kim's knowledge of the consequences of both consenting to and refusing the tests, and its probative value outweighed any prejudice. We agree. The facts of the prior DUI stop and the field sobriety tests were relevant to assist the jury in evaluating whether Kim understood the implied consent testing and the potential outcome of taking or refusing these tests. Because these two incidents were factually similar, the jury was able to consider Kim's knowledge of the testing procedure and the consequences of his decisions.

In so concluding, we are reminded that Rule 403 is "an extraordinary remedy which the courts should invoke sparingly." (Punctuation omitted.) *Williams*, supra, 328 Ga. App. at 879 (1). Even in close cases, courts should strike the balance in favor of admissibility. See *Jones*, supra, 297 Ga. at 164 (3). Accordingly, we find that the trial court properly admitted the prior conviction even if it was subject to Rule 403's balancing test.

8

Moreover, the trial court gave the jury a limiting instruction during the trial when the first officer testified and again in the jury charge. "[Q]ualified jurors under oath are presumed to follow the instructions given by the trial court." *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006); Cf. *Eubanks v. State*, 332 Ga. App. 568, 569-70 (1) (774 SE2d 146) (2015) (noting that the trial court gave limiting instructions on the admission of a prior conviction in a child molestation case, which has a comparable federal statute, thus minimizing the risk of prejudice). Accordingly, based on these facts, Kim's convictions are affirmed.

*Judgment affirmed. Doyle, C. J., and Ray, J., concur*.