**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 30, 2017**

# In the Court of Appeals of Georgia

A17A0916. SMITH v. THE STATE.

DILLARD, Chief Judge.

Following trial, a jury convicted Dajon Smith on two counts of armed robbery, two counts of false imprisonment, one count of kidnapping, and one count of aggravated assault. Smith appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence supporting the jury's verdict and arguing that the trial court erred in allowing a police officer to testify as an expert witness. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in the early morning hours of July 5, 2013, five high-school-age boys decided to end the day's Fourth of July festivities by going for a late-night swim at another

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

friend's apartment complex pool. On the short walk to the nearby apartment complex, the boys stopped at a convenience store to buy some snacks. And after leaving the store, they noticed that two males appeared to be following them. Nevertheless, the boys continued toward the apartment complex pool, and once there, they set their belongings down on some chairs and began swimming.

A few minutes later, the two males who had followed the boys hopped the fence surrounding the pool and approached the area where the boys had placed their belongings. Suspicious, the boys got out of the pool, at which point they observed that one of the males was tall, thin, and wearing a dark hat, and the other was shorter, stocky, and had a bandana covering most of his face. The shorter male then asked the boys if they wanted to buy some marijuana, and when they declined, he drew a handgun and pointed it at them. Immediately, one of the boys jumped back in the pool, swam to the other side, climbed the fence, and, recalling that he had seen a police officer at the convenience store, ran there to get help.

Meanwhile, the shorter male wearing the bandana ordered the remaining boys to get back into the pool. He then demanded that the boys turn over their money, cell phones, and any other valuables, and ordered one of the boys to get out of the pool to assist him and the taller male in retrieving such items from the boys' backpacks.

2

And after taking two cell phones and approximately $20 from the boys, the two assailants hopped back over the fence and fled the area. A few minutes later, two police officers arrived, having been alerted to the robbery by the boy who escaped and ran to the convenience store for assistance. But because of the lack of lighting in the pool area and the shorter male's bandana, the boys could only provide the officers with a description of the assailants' size and clothing.

The very next day, again in the early morning hours, the same two officers who had responded to the robbery received a call that two suspicious persons appeared to be casing an apartment complex that was within walking distance of the complex where the previous night's robbery occurred. Upon arriving at the complex, the officers came into contact with two males, who ultimately identified themselves as Tremaine Davie and Dajon Smith. Immediately, one of the officers noticed that the males matched the general description provided by boys of the individuals who had robbed them the previous night. And while speaking with Davie and Smith, the officers received another call from dispatch, informing them that the caller who originally reported the suspicious individuals further claimed that they appeared to have thrown a handgun into the woods bordering the complex just as the officers arrived.

Subsequently, one of the police officers walked Davie away from where the other officer was questioning Smith and asked him if he knew anything about the previous night's robbery. Initially, Davie denied any knowledge of the incident, but after the officer bluffed regarding the existence of surveillance video from the apartment complex, Davie admitted that he and Smith had robbed the boys the previous evening. Specifically, Davie stated that he and Smith followed the boys to the pool and that Smith, wearing a bandana, held the boys at gunpoint while he went through their belongings, taking two cell phones and $20. In light of this information, the officers arrested both Smith and Davie.

Following the arrests, the officer searched the nearby woods and located a handgun just as the caller who had reported the suspicious persons had speculated. The officers then transported Davie and Smith to the police station, at which point Davie again admitted to the robbery. And while searching Smith at the station, the officers found a bandana, which Smith had attempted to conceal inside the front of his pants. In addition, after securing a warrant, a detective searched the suspects' residences, recovering one of the boy's cell phones at Davie's apartment and the other at Smith's apartment, as well as clothing that matched the description of those worn by the shorter robber.

Thereafter, the State charged Smith and Davie, via the same indictment, with two counts of armed robbery, two counts of false imprisonment, one count of kidnapping, and one count of aggravated assault. Davie ultimately pleaded guilty, but Smith opted for trial, during which the aforementioned evidence was presented. The State also presented Davie as a witness, but in contrast to his earlier confessions, at Smith's trial, Davie claimed that he committed the robbery alone and denied that Smith was involved. Nevertheless, Davie admitted during his testimony that he had previously implicated Smith in the crime, and the State presented evidence of those initial confessions.

At the conclusion of the trial, the jury found Smith guilty on all counts. Smith later filed a motion for a new trial, in which he argued the two claims he now raises on appeal. The State filed a response, in which it conceded that the evidence was insufficient to support Smith's kidnapping conviction, but it otherwise contested Smith's claims. Consequently, the trial court vacated Smith's kidnapping conviction but denied the remaining claims in his motion for new trial. This appeal follows.

1. Smith contends, rather generally, that the evidence was insufficient to support his convictions. We disagree.[2]

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] And in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility but only determine whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary

---

[2] As noted *supra*, the trial court vacated Smith's kidnapping conviction. Thus, any claim of error regarding that conviction is moot, and we need not address it. *See Wallace v. State*, 294 Ga. 257, 258 (2) (754 SE2d 5) (2013) (holding that defendant's argument pertaining to his conviction of felony murder based on aggravated assault was moot because trial court vacated that conviction).

[3] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[4] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U.S. at 319 (III) (B).

to make out the State's case[.]"[5] With these guiding principles in mind, we turn now to Smith's challenge.

Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." And under OCGA § 16-5-41 (a), "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Finally, under former OCGA § 16-5-21 (a) (1),[6] "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith intent to murder, to rape, or to rob. . . ."

In this matter, the State charged Smith with two counts of armed robbery, alleging respectively in Counts 1 and 2 that he took a cell phone and U.S. currency from E. E. and a cell phone from J. T. "by use of an offensive weapon . . . a firearm. . . ." The State also charged Smith with two counts of false imprisonment, alleging

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[6] OCGA § 16-5-21 was amended effective July 1, 2014, such that a new subsection (a) was added and what was formerly subsection (a) became subsection (b). *See* Ga. L. 2014 Act 576, § 1. Thus, although none of the substantive changes to the statute impact this case, we nevertheless apply the prior version.

7

respectively in Counts 3 and 4 that he "violated the liberty of [M. M.]" and "[ J. T.]"

Finally, the State charged Smith with aggravated assault, alleging in Count 6 that he assaulted "[A. J.], with intent to rob, by pointing a gun at said victim. . . ." And as previously noted, the evidence showed that Smith held the four boys at gunpoint, forced them into the pool to restrict their ability to flee, and stole two cell phones and money from them before fleeing. Accordingly, the evidence was sufficient to support Smith's convictions.[7]

2. Smith also contends that the trial court erred in allowing one of the investigating police officers to testify as an expert regarding interviewing witnesses to a crime. Again, we disagree.

---

[7] *See McGil v. State*, 339 Ga. App. 130, 131 (1) (793 SE2d 442) (2016) (finding that evidence defendant approached victim in parking lot, pointed a gun at him, and then stole his cell phone before fleeing was sufficient to support convictions on charges of armed robbery and aggravated assault with intent to rob); *Kiser v. State*, 327 Ga. App. 17, 19-20 (2) (755 SE2d 505) (2014) (holding that evidence defendant held victim inside trailer at gunpoint was sufficient to support defendant's conviction on false-imprisonment charge); *Calhoun v. State*, 318 Ga. App. 835, 838-39 (2) (b) (734 SE2d 809) (2012) (finding that evidence defendant ordered store manager to front of store to assist other employee in opening cash register was sufficient to support false-imprisonment conviction); *Davis v. State*, 306 Ga. App. 450, 450-51 (702 SE2d 736) (2010) (holding that evidence defendant pointed gun at victim and demanded money was sufficient to support conviction on charges of aggravated assault with intent to rob).

OCGA § 24-7-707 of the new Evidence Code[8] provides that "[i]n criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Indeed, expert opinion testimony on issues to be decided

---

[8] Because this case was tried in June 2015, Georgia's new Evidence Code is applicable. *See* Ga. L. 2011, p. 99 § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). Regardless, the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under OCGA § 24-7-707 are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67). Thus, it is not inappropriate to consider decisions under the old Code in this particular instance. *See Jones v. State*, 299 Ga. 40, 42 n. 2 (785 SE2d 886) (2016) (noting that where provisions of the new Evidence Code were carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code). It is also permissible for Georgia courts to consider federal decisions in areas covered by carried-forward provisions. *See State v. Frost*, 297 Ga. 296, 299 (773 SE2d 700) (2015) (Blackwell, J.) ("Some other provisions of the new Evidence Code were carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they *may* rely on Georgia decisions under the old Code.") (emphasis supplied); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 2 (5th ed. 2016) ("*Frost* is a clear and highly beneficial opinion. Significantly, *Frost* is forceful in connection with the use of federal authority and the rules of statutory meaning. When it comes to the use of prior Georgia decisions in connection with 'carried over . . . old Evidence code' statutes, however, *Frost* use the word 'may.' This softened language likely reflects the Georgia Supreme Court's recognition that, even where former Georgia evidence rules were replicated under the new code, their interpretation might, at least 'at the margins,' be impacted by the philosophical changes in favor of admissibility reflected by Georgia adopting federal version of Evidence Rules 401 (relevance), 402 (presumptive admissibility), and 403 (exclusion of otherwise relevant evidence).").

by the jury—even the ultimate issue—is admissible "where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman."[9] And in order to qualify as an expert in a criminal proceeding in Georgia, all that is required is that "a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a prerequisite for expert status."[10] Importantly, a decision as to whether "a witness possesses such learning or experience to qualify as an expert witness lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused."[11]

---

[9] *Maldonado v. State*, 325 Ga. App. 41, 49 (5) (752 SE2d 41) (2013) (punctuation omitted); *see also Mosby v. State*, 300 Ga. 450, 453 (2) (796 SE2d 277) (2017) (noting that expert testimony is admissible when the expert's conclusion is beyond the ken of the average layman); *Gibbs v. State*, 340 Ga. App. 723, 728-29 (3) (798 SE2d 308) (2017) (same).

[10] *Pepe-Frazier v. State*, 331 Ga. App. 263, 266 (2) (770 SE2d 654) (2015) (punctuation omitted); *see also Burgess v. State*, 292 Ga. 821, 822 (2) (742 SE2d 464) (2013) ("A witness need not be formally educated in the field at issue to be qualified as an expert."); *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004) ("An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like.").

[11] *Pepe-Frazier*, 331, Ga. App. at 266-67 (2) (punctuation omitted); *see also Burgess*, 292 Ga. at 822 (2) ("A trial court has broad discretion in accepting or rejecting the qualifications of an expert. We will not disturb such rulings unless there

During Smith's trial, one of the police officers who initially responded to the victims' report of the robbery testified that he had been involved in "dozens upon dozens" of such cases, at which point, the State's prosecutor asked: "Okay, what do you typically expect out of eyewitnesses to some sort of crime? Would you talk to us a bit about that?" Smith's counsel objected, arguing that the officer was not an expert in this area and that he would have to be an expert in order to respond to that type of question. The trial court then asked the State to provide a foundation for the officer's expertise, and thereafter, the officer testified that he had eleven years of experience with the police department; had taken the basic POST mandates and "dozens and dozens" of other classes, including courses pertaining to interviewing and interrogating. The officer also reiterated that he had significant experience investigating crimes such as the one at issue and had testified on multiple occasions regarding such investigations.

Following this testimony, the State's prosecutor moved for the officer to be accepted "[a]s an expert in basically the field of investigations, being able to talk to witnesses and have an opinion about what you're looking for and what you'd expect

---

is a showing that the trial court abused its discretion." (citations and punctuation omitted)).

11

when you talk to witnesses." Smith's counsel, again, objected, arguing that the State had not laid the proper foundation. But the trial court disagreed and overruled the objection. The State's prosecutor and the officer then engaged in the following colloquy:

Q. Will you just talk to us a little bit about eyewitness accounts, the kind of things that you expect, talk to us a little about that.

A. Particularly in cases like this where you have multiple victims, generally speaking, they're considered unreliable. It's hard to say one individual to another how they react to stress, lighting conditions, and things of that nature, so when we arrive on a scene like this or any other scene where you've got multiple victims or witnesses, you tend to get a jumble of different things. An example would be some person, you know, says he was wearing this color shirt or he was wearing that color shirt. You know, he was a black male, he was a white male, things of that nature. So we generally consider them to be unreliable due to the fact that you wind up, you know, with 40 different —

Q. Okay. And you expect some level of inconsistencies among different witnesses?

A. Yes.

12

Q. When you say unreliable, I guess when you have a lot of witnesses you get—find that you typically get some sort of common ground when you generally get a good idea of what happened?

A. You generally—we say the truth is somewhere in the middle.

Q. Okay.

A. You know, it's not that anyone is lying, but, again, people react differently to stressors. And it's just a matter of talking to them and finding the common middle ground that they have.

On appeal, Smith again contends that the trial court erred in allowing the officer to testify as an expert. But in addition to reasserting his claim that the officer did not have the sufficient background to be considered an expert, Smith also argues that the officer's testimony constituted improper bolstering of the victims' credibility and, thus, invaded the province of the jury. Nevertheless, pretermitting whether Smith waived appellate review of this latter argument by failing to object to the officer's

testimony on that specific ground,[12] we conclude that the trial court did not err in allowing the officer to testify in such a manner.

First, the police officer testified that he had extensive training in conducting investigations and interviewing witnesses and 11 years of experience doing so. Given these particular circumstances, the trial court did not abuse its discretion in finding that the State laid a sufficient foundation that the officer possessed a greater knowledge and experience in this area than that of the average juror, and, therefore, it did not err in qualifying the officer as an expert witness.[13] And as to Smith's second—and newly raised—argument, "[i]mproper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness

---

[12] *See Hurt v. State*, 298 Ga. 51, 53-54 (2) (779 SE2d 313) (2015) (holding that "in order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground" (punctuation omitted)); *Sneed v. State*, 337 Ga. App. 782, 785 (1) (b) (788 SE2d 892) (2016) ("To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived." (punctuation omitted)).

[13] *See Gibbs*, 340 Ga. App. at 728-29 (3) (holding that testimony by a police expert with regard to whether the use-of-force continuum permits a police officer to shoot at a car coming toward him would be beyond the ken of the average juror and therefore admissible); *Hubert v. State*, 297 Ga. App. 71, 74 (4) (676 SE2d 436) (2009) (holding that the trial court did not err in qualifying the detective as an expert witness given the detective's training and experience in conducting forensic interviews of children).

14

is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror."[14] But here, the officer testifying as an expert did not offer any opinion as to the truthfulness of the boys. Rather, the officer testified that, on the basis of his experience, multiple witnesses to a crime often provide inconsistent accounts of the event. And that testimony was in no way a "comment on an ultimate issue of fact."[15] Indeed, as to the ultimate issue of whether *Smith* was one of the males who committed the robbery, it would have been impossible for the officer to provide such an opinion on the boys' truthfulness given that the boys themselves did not, at any point, identify either of their assailants.

---

[14] *Maddox v. State*, 275 Ga. App. 869, 871 (2) (622 SE2d 80) (2005); *accord Westbrooks v. State*, 309 Ga. App. 398, 401 (2) (710 SE2d 594) (2011).

[15] *Maddox*, 275 Ga. App. at 871 (2); *see Jones v. State*, 296 Ga. App. 288, 291 (1) (d) (674 SE2d 130) (2009) (holding that officer testifying as an expert witness that, in his experience, victims of abuse are generally reluctant to report the abuse, as recounting such to police and others is perceived as an unpleasant experience, was not a comment on the victims' truthfulness and did not invade the province of the jury); *Walton v. State*, 291 Ga. App. 736, 739-40 (2) (662 SE2d 820) (2008) (finding that loss prevention officer's testimony as to the existence of certain typical patterns of behavior exhibited by shoplifters, and then describing the behaviors he observed while following defendant around the store did not constitute an opinion as to the ultimate issue); *Maddox*, 275 Ga. App. at 871 (2) (holding that expert's testimony, based on her experience as a forensic interviewer, regarding the ability of interviewees to recall certain things did not constitute a comment on an ultimate issue of fact).

Accordingly, the trial court did not err in allowing the officer to testify as an expert regarding interviewing witnesses to a crime.[16]

For all these reasons, we affirm Smith's convictions.

*Judgment affirmed. Ray, P. J. and Self, J., concur.*

---

[16] *See supra* notes 13 and 15.