**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 23, 2015**

# In the Court of Appeals of Georgia

A15A1521. THE STATE v. GUNN.

DILLARD, Judge.

The State appeals the trial court's order granting Shawn Gunn's motion to exclude a 911 call made by the purported victim in the State's prosecution of Gunn for family-violence battery. Gunn filed his motion after the victim informed the State that she would not return to Georgia to testify, and the trial court agreed with Gunn that admission of the recorded call at trial would violate his Sixth Amendment right to confrontation. Because the trial court reviewed a transcript of the call, and accordingly, because a recording of the call does not appear in the record before us, we vacate the trial court's order and remand to the trial court to reconsider the motion after listening to the recorded call.

The record reflects that the alleged victim called 911 following an altercation with Gunn and that, during the course of the call, the victim drove away from the

scene of the altercation and to a location where she could meet with law enforcement. The record contains two transcripts that purport to memorialize the conversation between the victim and the 911 operator—one prepared by the State and one prepared by Gunn, and both of which were attached to the parties' post-motion-hearing briefs filed for the trial court's consideration.

At the hearing on Gunn's motion, neither party tendered the recording into evidence, and although the trial court at two different points indicated that it would need to listen to the recording,[1] the court then backtracked and suggested, "Maybe you just need to give me a transcript of it. Let me look at it and then that what [sic] we'd be doing in a motion hearing. I need to find out what's going on, what's said." The court then instructed, "Give me a transcript of the tape and let me see what we've got and then y'all brief me on your timeline . . . ." And while the trial court's order indicates that the court "reviewed the 911 tape," there is no tape in the record, only the parties' transcripts. Then, following its review, the trial court granted Gunn's motion after determining that the victim's statements were "testimonial in nature" because "there was no emergency" and the statements "were more about investigation

---

[1] The court stated, "Well, you know, it deals with his constitutional rights. I mean, we need to listen to what's going on." Then later, "[w]ell, I need to listen – I need a – how long is the tape? It can't be very long."

2

and gathering evidence for apprehension of the Defendant." This appeal by the State follows.

At the outset, we note that the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[2] This clause applies to witnesses against the accused—"in other words, those who 'bear testimony.'"[3] Consistent with the framers' original public understanding, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."[4] And the Supreme Court of the United States has determined that 911 calls, or portions of 911 calls, can fall under the category of "testimonial statements," depending on a determination as to the primary purpose for the call.[5] Consistent with

_____

[2] U.S. Const. amend. VI; *see also* Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the law of this state . . . shall be confronted with witnesses testifying against such person.").

[3] *Crawford v. Washington*, 541 U.S. 36, 51 (III) (A) (124 SCt 1354, 158 LE2d 177) (2004).

[4] *Id.* at 59 (IV).

[5] *See Michigan v. Bryant*, 562 U.S. 344, 365 (III) (B) (131 SCt 1143, 179 LE2d 93) (2011) (noting that "a conversation which begins as an interrogation to determine

3

this precedent, the Supreme Court of Georgia has also recognized that, "in certain circumstances a [911] caller may shift from a non-testimonial statement into a testimonial one"[6] and that, therefore, trial courts "must decide whether a caller's primary purpose has shifted in such a manner as to render portions of the call testimonial in nature, and should selectively redact portions of the recording when that is the case."[7]

To determine the primary purpose of any interrogation, including 911 calls, and to decide whether the primary purpose is "to enable police assistance to meet an

---

the need for emergency assistance can evolve into testimonial statements" and that, when this happens, a trial court can exclude the portions of those statements that are testimonial in nature); *Davis v. Washington*, 547 U.S. 813, 823-29 (III) (A) (126 SCt 2266, 165 LE2d 224) (2006) (evaluating the primary purpose of a 911 call to determine whether statements were testimonial or non-testimonial); *see also Brittain v. State*, 329 Ga. App. 689, 694 (2) (a) n.15 (766 SE2d 106) (2014); *Philpot v. State*, 309 Ga. App. 196, 203 (1) (b) (709 SE2d 831) (2011) (physical precedent only as to Division 1).

[6] *Pitts v. State*, 280 Ga. 288, 291 (627 SE2d 17) (2006).

[7] *Id.*; *see also Owens v. State*, 329 Ga. App. 455, 458 (1) (a) (765 SE2d 653) (2014) ("Because . . . the trial court properly redacted those portions of the calls arguably involving the victim's narration of past events and his assessment of [the defendant's] character, the court did not err when it concluded that the 911 calls were nontestimonial.").

4

ongoing emergency,"[8] a court must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties."[9] And the "circumstances in which an encounter occurs— *e.g.*, at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards—are clearly matters of objective fact."[10] Furthermore, the parties' actions and statements must also "be objectively evaluated."[11] The relevant inquiry, then, is not the actual or subjective purpose of the individuals who are involved in a particular encounter, but rather "the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred."[12]

The Supreme Court of the United States has explained that the "existence of an ongoing emergency is relevant to determining the primary purpose of the interrogation because an emergency focuses the participants on something other than

---

[8] *Bryant*, 562 U.S. at 359 (III); *Davis*, 547 U.S. at 822 (II), 828 (III) (A).

[9] *Bryant*, 562 U.S. at 359 (III).

[10] *Id.* at 360 (III) (A).

[11] *Id.*

[12] *Id.*

proving past events potentially relevant to later criminal prosecution."[13] But whether

an emergency exists and remains ongoing is "a *highly context-dependent inquiry*."[14]

And it is for this reason that we vacate the trial court's order and remand for

reconsideration of Gunn's motion *after* listening to a recording of the 911 call, which

must also be made part of the record so that this Court—should there be another

appeal—can do likewise.

While a review of a transcript of a 911 call may be sufficient to determine the

primary purpose of such a call in some cases, under the particular facts and

circumstances of *this* case, listening to the actual *recording* may impact the trial

court's analysis and conclusions. Indeed, the State's transcript suggests that at the

beginning of the 911 call, Gunn was continuing to approach and pursue the victim:

"Well, oh, you see, he's walking at me. He's now. [sic]" Gunn's transcript differs:

"Well . . . uh . . . let's see . . . um . . . he's walking now . . . he's . . . he's uh . . .

Providence Place." Additionally, the transcript prepared by the State contains

statements by the victim that suggest Gunn continued his attack even after she entered

her vehicle:

---

[13] *Id.* at 361 (III) (B) (punctuation omitted).

[14] *Id.* at 363 (III) (B) (emphasis supplied).

6

I got blood on my face[.] I probably go[t] a busted lip. I will probably have a black eye. When I was trying to drive away, he was grabbing his hand cause he was trying to punch the window.

But Gunn's transcript records the victim's statements differently:

I got blood on my face. I think I probably got a busted lip and I . . . I'm probably gonna have a black eye. He . . . uh . . . went outside . . . went away. He was grabbing his hand 'cause he was trying to punch the window. I got a baby.

In addition to noting these glaring inconsistencies between the parties' two prepared transcripts, we also again note that the relatively brief 911 call at issue was made while the alleged victim began to and did drive away from the scene of the altercation. And given the timing of the call and the victim's actions while making the call, *listening* to the recording would allow the trial court (and this Court) to hear the victim's tone of voice, assess her level of composure, and glean clues about the environment in which she made her call. Suffice it to say, these details will provide greater context for the circumstances in which the call was made,[15] and this

---

[15] *See Davis*, 547 U.S. at 827 (III) (A) (comparing and contrasting the statements at issue in *Crawford v. Washington* with those in *Davis*, and observing that "Crawford was responding calmly, at the station house, to a series of questions, with the officer-interrogator taping and making notes of her answers; McCottry's frantic answers were provided over the phone, in an environment that was not tranquil, or

information could certainly impact an assessment of whether the call at any point evolved from a non-testimonial to testimonial statement.[16]

---

even (as far as any reasonable 911 operator could make out) safe"); *Pitts*, 280 Ga. at 290 (noting that during the course of multiple phone calls, victim was heard screaming at the defendant); *see also State v. Bratschi*, No. 5327, 2015 WL 4269685, at **67 (S.C. Ct. App. 2015) (noting that caller was "frantic" and that, even after caller learned that perpetrator was at the police station, the caller was "still afraid she will come into the trailer at any moment" and that the caller was "not calm and rational and is still operating as though the attack is still in progress"); *Hayes v. Adams*, No. 1:09-CV-01749 LJO GSA HC, 2011 WL 5040710, at *11 (E.D. Cal. 2011) (noting that, despite the fact that assault had ended and victim did not "desire or require medical assistance," 911 call was a "bona fide call for help" when victim could be heard throwing up and crying in the background and the "call was not tranquil but was a frantic call for help"); *People v. Conyers*, 777 NYS2d 274, 277 (N.Y. Sup. 2004) (noting that "audible on the[ ] 911 tapes are the voices of the victim and the defendant while the assault is still in progress" and that it was "clear to this Court, having heard the panicked and terrified screams of [the victim], that her intention in placing the 911 calls was to stop the assault in progress and not to consider the legal ramifications of herself as a witness in a future proceeding"). *Cf. Bryant*, 562 U.S. at 364-65 (III) (B) ("The medical condition of the victim is important to the primary purpose inquiry to the extent that it sheds light on the ability of the victim to have any purpose at all in responding to police questions and on the likelihood that any purpose formed would necessarily be a testimonial one. The victim's medical state also provides important context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public.").

[16] *Cf. Bryant*, 562 U.S. at 365 (III) (B) ("This evolution may occur if, for example, a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute. It could also occur if a perpetrator is disarmed, surrenders, is apprehended, or, as in *Davis*, flees with little prospect of posing a threat to the public.").

Accordingly, for all of the foregoing reasons, we vacate the trial court's order and remand to the trial court for reconsideration of Gunn's motion after listening to a recording of the 911 call, which should also be made part of the record for any subsequent appeal.

*Judgment vacated and case remanded. Ellington, P. J., and McFadden, J., concur.*

9