**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 23, 2017**

# In the Court of Appeals of Georgia

A17A0634. DANLEY v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for driving under the influence (DUI) and with a suspended license, Leonard Danley, Jr., argues that the evidence was insufficient and that the trial court erred in some evidentiary rulings and in requiring him to admit the elements of DUI in order to receive a charge on justification. Danley also argues that trial counsel was ineffective. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation and emphasis omitted).

So viewed, the record shows that on the early morning of February 8, 2014, Danley had been taking shots of whiskey with a couple at their home when he walked up behind the woman and put his hands underneath her shirt, moving them from her back toward her breasts. The victim immediately demanded that Danley leave the house; when he failed to do so, the victim's husband physically removed him. As the husband forced Danley toward Danley's car, the victim intervened. Danley then swung at the husband but missed, and the punch landed on the victim's face. When the victim told Danley that she was going to call the police, Danley struck her in the face a second time, got in his car, and drove away.

Acting on two 911 calls from the victim's husband, who died before trial, a captain with the Douglas County Sheriff's Office observed a white Nissan Cube driving away from the location of the fight. The officer initiated a traffic stop, identified Danley as the driver, and observed that Danley appeared to be intoxicated. Less than one minute later, a deputy arrived to conduct a DUI investigation. The deputy noted that Danley smelled of alcohol and had slurred speech and bloodshot,

watery eyes. Danley admitted to having consumed alcohol a hour earlier. With Danley's consent, the deputy performed horizontal gaze-nystagmus (HGN) and walk-and-turn tests. Danley exhibited all six clues on the HGN test, could not keep his balance during the walk-and-turn, and repeatedly put his hands in his pockets despite the deputy's instructions not to do so. An Alcosensor breath test was also positive.

The deputy placed Danley under arrest for DUI, read him the implied consent warning, and asked for permission to test Danley's blood, which Danley refused. The deputy ran Danley's information and found that his driver's license was suspended as a result of a prior DUI conviction. The deputy then obtained and executed a search warrant as to Danley's blood, which showed a blood-alcohol concentration of 0.253, or more than three times the legal limit.[1]

Danley was charged with sexual battery, battery, DUI per se and less-safe, and driving with a suspended license. The sexual battery charge was later dropped. At trial, Danley stipulated in writing that his license had been suspended in August 2012 and not reinstated before the incidents at issue; this stipulation was read to the jury.

_____

[1] See OCGA § 40-6-391 (a) ("A person shall not drive or be in actual physical control of any moving vehicle while: . . . (5) [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended.").

The State presented evidence including Danley's prior DUI conviction arising from events occurring on December 31, 2011, at which time Danley showed all six clues as to an HGN test, blew a positive alcosensor result, and refused a blood test.

After the State rested its case, Danley sought to introduce the deceased husband's two 911 calls as well as a return call from the sheriff's department in which police, who were pursuing Danley, asked the husband about the direction in which Danley was driving away from the scene. After the State argued that the call from the sheriff's department to the husband took place after any emergency had come to an end, the trial court excluded this call as testimonial evidence and inadmissible hearsay. Danley then moved for a directed verdict on grounds including that the evidence was insufficient as to the battery charge and that the captain lacked probable cause to stop Danley. After explaining that Danley had waived any issue as to probable cause by failing to file a motion to suppress before trial, the trial court denied the motion for directed verdict.

A jury acquitted Danley of the battery charge, but found him guilty of both counts of DUI and driving with a suspended license. The trial court merged the two

DUI counts and sentenced Danley to 12 months with 150 days to serve. This appeal followed.[2]

1. Our review of the record, including the evidence outlined above, shows that the evidence was sufficient to sustain Danley's conviction for DUI and driving with a suspended license.[3] See OCGA §§ 40-6-391 (a) (1), (5) (defining less-safe and per-se DUI), 40-5-121 (defining offense of driving while license suspended or revoked); *Jackson*, supra; *Daniel v. State*, 298 Ga. App. 245, 246 (1) (679 SE2d 811) (2009) (evidence including defendant's blood-alcohol level of 0.235 shortly after an accident was sufficient to sustain less-safe and per-se DUI convictions).

2. Danley argues that the trial court erred when it denied his motion for a directed verdict because officers did not have probable cause to stop or arrest him. As the trial court explained, however, Danley failed to move to suppress any evidence before trial, with the result that he waived any constitutional challenge to the

[2] The State has moved to dismiss the appeal on grounds including that Danley's brief was filed two days after the deadline for doing so, which had already been extended 29 days at Danley's request. See Court of Appeals Rule 23 (a). The motion to dismiss is denied.

[3] Danley's contention that the trial court should have granted a directed verdict as to the battery charge is mooted by the jury's acquittal of him on that charge. *Reagan v. State*, 281 Ga. App. 708, 709-710 (1) (637 SE2d 113) (2006).

admissibility of that evidence. *Harkleroad v. State*, 317 Ga. App. 509, 512 (1) (b), n. 9 (732 SE2d 278) (2012); see also *Hatcher v. State*, 224 Ga. App. 747, 748-749 (1) (482 SE2d 443) (1997) ("[f]ailing to file a timely motion to suppress amounts to a waiver of even constitutional challenges") (citation omitted). Further, the officers had authority to stop Danley's car on the basis of the husband's call and to arrest him for DUI when he exhibited evidence of impairment, including smelling of alcohol, showing six of six HGN clues, and blowing a positive breath test. See *Jaffray v. State*, 306 Ga. App. 469, 473-474 (3) (702 SE2d 742) (2010).

3. Danley argues that the trial court erred when it excluded the call from the sheriff's department to the victim's husband from evidence as hearsay. We disagree.

(a) Although Danley's trial took place in March 2016, Danley cites a single statute from the former Evidence Code, former OCGA § 24-2-4,[2] in support of his

---

[2] Former OCGA § 24-2-4 provided that "[w]here either party introduces part of a document or record, the opposite party may read so much of the balance as is relevant." Although this former statute was not replaced by a specific provision in the new Evidence Code, the so-called "rule of completeness" codified at OCGA § 24-8-822 (formerly OCGA § 24-3-38) provides that "[w]hen an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." See also OCGA § 24-1-106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement."); *Westbrook v. State*, 291 Ga. 60, 62 (727 SE2d 473) (2012); *Morales v. State*, 337 Ga. App. 614, 619 (3) (a) (788 SE2d 535) (2016).

argument that it was "unfair" to exclude the third call. As a preliminary matter, we note that a citation to a statute which was not in effect at the time of the March 2016 trial at issue does not amount to effective legal argument. See *Davis v. State*, 299 Ga. 180, 192 (3) (787 SE2d 221) (2016) ("Georgia lawyers do this Court no favors – and risk obtaining reversible evidence rulings from trial courts – when they fail to recognize that we are all living in a new evidence world and are required to analyze and apply the new law.").

Danley does not argue that the admission of the sheriff's return call was necessary to correct any "misleading" impression created by the admission of the first two calls. See *United States v. Self*, 414 Fed. Appx. 611, 615 (5th Cir. 2011) (when defendant had not explained how portions of recorded conversations were "misleading and prejudicial," he had "failed to show that the district court abused its discretion" in admitting those portions). Further, each call was separate, such that Danley's invocation of the rule of completeness fails. See *United States v. Stevens*, 778 FSupp2d 683, 708-709 (W.D. La. 2011) (separate statements made by different defendants were not admissible under the rule of completeness absent a showing of relevance). Under the new Evidence Code, moreover, it remains for the trial court to determine whether evidence is relevant, and we review such decisions only for an

abuse of discretion, as where "the trial court significantly misapplies the law." *Oliver v. State*, 329 Ga. App. 377, 379 (765 SE2d 606) (2014) (footnote omitted). In this case, the trial court correctly applied the law.

(b) The husband's death before trial raises the Confrontation Clause concerns argued below as to both the husband's calls to 911 and the return call back from police.

> In *Crawford v. Washington*, 541 U. S. 36, 53-54 (124 SCt 1354, 158 LE2d 177) (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Because only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause, it is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."

*Thomas v. State*, 284 Ga. 540, 542 (2) (668 SE2d 711) (2008), quoting *Davis v. Washington*, 547 U. S. 813, 821 (II) (B) (126 SCt 2266, 165 LE2d 224) (2006). Specifically, "911 calls, or portions of 911 calls, can fall under the category of 'testimonial statements,' depending on a determination as to the primary purpose for the call." *State v. Gunn*, 333 Ga. App. 893, 894 (777 SE2d 722) (2015) (footnote

omitted). Whether the "primary purpose" of a communication between police and a victim is part of an "ongoing emergency" is a "matter[ ] of objective fact" for a trial court to resolve. *Michigan v. Bryant*, 562 U. S. 344, 360 (III) (A) (131 SCt 1143, 179 LE2d 93) (2011); see also *Gunn*, 333 Ga. App. at 895 ("whether an emergency exists and remains ongoing is a highly context-dependent inquiry") (punctuation, footnote and emphasis omitted).

The trial court admitted the husband's first two 911 calls on the ground that they were made during the ongoing emergency created by Danley's attack on the victim and were thus non-testimonial and admissible, and Danley does not challenge this decision on appeal. Although Danley sought the admission of the sheriff's return call because the husband stated in it that Danley had punched the victim unintentionally, the court excluded this call on the ground that by the time that call was placed, Danley had left the property and the emergency had ended. Accordingly, the conversation was testimonial and, as the husband was deceased at the time of trial and unavailable to testify, inadmissible hearsay.

Here, the record supports both the trial court's factual determination that by the time the third call was placed by the sheriff's department to the victim's husband, any "ongoing emergency" posed by Danley to the victims was over and its legal

9

conclusion that, in light of the husband's death, the call was hearsay and its admission would have been erroneous. See *Cuyuch v. State*, 284 Ga. 290, 295 (3) (667 SE2d 85) (2008) (reversing an affirmance of defendant's conviction for aggravated battery when the jury considered testimonial and inadmissible hearsay statements as to the circumstances of the crime). Further, Danley was acquitted on the battery charge such that any possible error in excluding the third call was harmless. See *Cook v. State*, 256 Ga. 808, 812 (2) (353 SE2d 333) (1987) (erroneous refusal to admit evidence showing a defendant's lack of an extravagant lifestyle was harmless when defendant was acquitted on theft-by-taking charges). For all these reasons, we cannot find an abuse of discretion in the trial court's exclusion of the sheriff's return call as inadmissible testimonial and hearsay evidence.

4. Danley also argues that the trial court erred when it admitted his December 2011 DUI conviction into evidence. We disagree.

Before trial, the State filed notice of its intent to introduce evidence of Danley's DUI conviction arising from events occurring on December 31, 2011. At a pretrial hearing, the State proffered an officer's testimony that Danley was pulled over in 2011 pursuant to a BOLO, smelled of alcohol, had bloodshot, watery eyes and slurred speech, admitted to drinking, and blew a positive alcosensor result. After being

placed under arrest for DUI, Danley refused a state-administered blood test. The State offered this officer's testimony about the 2011 incident for purposes including a showing that Danley knew that drinking impaired his driving. The State also offered a certified copy of the conviction arising from these events.

> OCGA § 24-4-417 (a) provides in relevant part that
>
> evidence of the commission of another [DUI] violation . . . on a different occasion by the same accused *shall be admissible* when: (1) The accused refused in the current case to take the state administered test required by Code Section 40-5-55 and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident; . . .

(Emphasis supplied.) As the Supreme Court of Georgia has held, evidence that a DUI defendant previously refused a state-administered blood test "'shall be admissible'" to permit the trier of fact to infer that "a prohibited intoxicant was present to some degree" and that the defendant "*knew* that the test results likely would tend to show that he was, in fact, under the influence of a prohibited substance." *State v. Frost*, 297 Ga. 296, 305 (773 SE2d 700) (2015), quoting OCGA § 24-4-417 (a) (1) (emphasis supplied).

Here, the trial court specifically found that the State offered evidence concerning the December 2011 DUI for the valid purpose of proving Danley's

11

knowledge and intent, and that the probative value of the 2011 DUI was "not substantially outweighed by the danger of unfair prejudice or the confusion of issues or misleading the jury."[3] The trial court also found that State had proffered sufficient evidence, in the form of both the officer's testimony and the certified conviction, that Danley in fact committed the prior act. There was no abuse of discretion in these findings. *Frost*, 297 Ga. at 305-306 (no abuse of discretion in trial court's finding that evidence of two prior DUIs was "'relevant to prove knowledge'" and was thus admissible under Rule 417 (a) (1), and quoting that Rule); see also *State v. Jones*, 297 Ga. 156, 160-164 (2), (3) (773 SE2d 170) (2015) (remanding to the Court of Appeals for consideration of whether trial court's admission of defendant's prior DUI conviction, which was relevant to prove his intent to drive while intoxicated and his knowledge of the consequences of doing so, was an abuse of discretion under Rules 403 and 404 (b)).

---

[3] See OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

5. Danley also argues that the trial court erred in forcing him to "admit guilt" to the less-safe DUI charge before granting his request for a charge on justification. We disagree.

"The defense of justification is an affirmative defense, meaning that the defendant admits the act but seeks to justify, excuse, or mitigate it," and "[t]he defendant must admit the crime before he can raise the defense." *London v. State*, 289 Ga. App. 17, 19 (1) (656 SE2d 180) (2007) (footnote omitted).

Danley requested a jury charge on the affirmative defense of justification by "duress or necessity" on the ground that the wife and husband had "kept bringing him drink after drink." Consistent with the above-quoted law, the trial court held that Danley would have to admit to the elements of less-safe DUI in order to receive a charge on justification. Danley agreed, retook the stand, and admitted to the elements of less-safe DUI. The trial court then charged the jury on the affirmative defense of

13

justification by reason of coercion,[4] and Danley made no objection to this or any other portion of the charge.

Danley has never asserted that the charge on justification was not adjusted to the evidence. Further, the trial court's accurate statement of the law did not "force" Danley to admit to the elements of DUI; rather, Danley made an informed and strategic choice to do so as the only means of placing his justification defense before the jury. For these reasons, Danley's assertion lacks merit.

6. Although Danley asserts that his trial counsel was ineffective, the record shows that trial counsel never filed a motion for new trial and that he continues to represent Danley on this appeal.[5]

---

[4] See, e.g., Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II (Criminal), § 3.01.10 ("The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct[, and] can be claimed (a) when the person's conduct is justified under OCGA §[ ] 16-3-26" [defining coercion for purposes of a defense as "such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury"]).

[5] In fact, Danley's father served as his trial counsel and is serving as his appellate counsel.

It is highly unusual, if not unprecedented, for trial counsel to fail to file any motion for new trial, to remain as appellate counsel, and to attempt to raise his own ineffectiveness at trial for the first time on appeal. Nonetheless,

> [u]nder well established Georgia law, appellant was required to raise any issue of ineffective assistance of trial counsel at the earliest practicable moment to avoid it being deemed waived. . . . By "earliest practicable moment," we mean that the ineffectiveness claim must "be raised *before appeal* if the opportunity to do so is available." (Emphasis in original.) *Glover v. State*, 266 Ga. 183, 184 (465 SE2d 659) (1996).

*Garland v. State*, 283 Ga. 201, 202 (657 SE2d 842) (2008) (citations and punctuation omitted; emphasis in original). Even assuming that this appeal was the earliest opportunity at which trial counsel realized and raised his own ineffectiveness, this appeal is not a practicable forum for the consideration of that claim, for two reasons: because the trial court was never given an opportunity to make any factual finding on the question of ineffectiveness, and because an "appellant's trial counsel [can]not reasonably be expected to assert or argue his own ineffectiveness on appeal. *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991)." Id. at 203.

An appellant's "failure to raise the issue at all in the trial court results in no appellate consideration of the claim of ineffectiveness[.]" *Wilson v. State*, 277 Ga.

15

195, 198 (2) (586 SE2d 669) (2003) (citation omitted). Further, Danley "does not argue or point to any facts in the record that indicate either cause for appellate counsel's failure to raise the claim or any prejudice arising therefrom." *White v. Kelso*, 261 Ga. at 33. This record, including Danley's blood test result, his stipulation as to driving without a license, and his acquittal on the battery charge, makes it impossible for him to show that he was prejudiced by any alleged ineffectiveness. Id. The issue must therefore await habeas proceedings, which are "the exclusive post-appeal procedure available to a criminal defendant who asserts the denial of a constitutional right." *Mallon v. State*, 266 Ga. App. 394, 398 (4) (597 SE2d 497) (2004) (citation omitted).

*Judgment affirmed. McFadden, P. J., and Bethel, J., concur*.