**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**December 27, 2017**

# In the Court of Appeals of Georgia

A17A1977. ADAMS v. THE STATE.

BARNES, Presiding Judge.

A Hall County jury found Gregory Claude Adams guilty of driving under the influence of alcohol to the extent that he was less safe to drive ("DUI"), failure to maintain lane, and following too closely. On appeal, Adams challenges the introduction of testimony and documentary evidence of a stipulation reached at an administrative civil hearing pertaining to the suspension of his driver's license and the introduction of a prior incident in which he was arrested for DUI. For the reasons discussed below, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation and punctuation omitted.) *Danley v. State*, 342 Ga. App. 61, 61 (802 SE2d 851) (2017). So viewed, the evidence shows that on the afternoon of July 2, 2016, a trooper with the Georgia State Patrol was traveling southbound on Georgia

State Route 11 when he saw an overturned pickup truck down an embankment off the shoulder of the highway. The driver had exited from the overturned truck and walked back up to the shoulder of the highway, and the trooper stopped his patrol car and approached the driver, who identified himself as Adams. The trooper asked Adams whether he was okay, and Adams indicated that he was fine. Adams told the trooper that he had been traveling southbound on the highway when the vehicle in front of him abruptly stopped and turned onto a side street. According to Adams, he had swerved to the shoulder to avoid the vehicle, lost control of his truck, and crashed down the embankment. As Adams spoke, the trooper noticed a strong odor of alcohol coming from his breath and observed that he had bloodshot eyes and slowed speech.

After Adams was checked by emergency medical personnel who had responded to the scene, the trooper continued speaking with him. Adams denied having anything to drink and declined to take a preliminary breath test and the walk-and-turn and one-leg stand field sobriety tests. However, Adams agreed to take the horizontal gaze nystagmus ("HGN") field sobriety test and exhibited six out of six clues of impairment.

Based on Adams' description of what had occurred on the highway, the crash scene, his physical manifestations, and his performance on the HGN test, the trooper

2

concluded that Adams had been driving under the influence of alcohol and arrested him for DUI. The trooper read Georgia's implied consent notice for suspects over the age of 21 to Adams and requested that he take a State-administered blood test. Adams declined to take the test.

Adams was charged by accusation with DUI less safe, failure to maintain lane, and following too closely.[1] The trooper who had arrested Adams also filed a sworn report with the Department of Driver Services to initiate the process of administratively suspending Adams's driver's license based on his refusal to take the State-administered blood test.[2] However, at the subsequent administrative license suspension ("ALS") hearing, the trooper and Adams's defense counsel agreed that Adams would enter a guilty plea to the DUI charge in the criminal case in exchange for the trooper withdrawing his sworn report and suspending the ALS proceeding.

---

[1] Adams also was charged with no proof of insurance but was acquitted of that offense at trial.

[2] In Georgia, if a suspect arrested for DUI refuses to take the State-administered chemical test under the implied consent law, his driver's license is suspended, subject to an administrative license suspension hearing. See OCGA § 40-5-67.1 (d), (f), (g); *Flading v. State*, 327 Ga. App. 346, 347, n. 2 (759 SE2d 67) (2014). After a suspect refuses to take the State-administered chemical test, the law enforcement officer submits a report of the refusal to the Department of Driver Services as part of the administrative suspension process. See OCGA § 40-5-67.1 (d).

Consequently, the trooper and defense counsel filed a joint motion to withdraw the suspension of Adams's driver's license that memorialized the stipulation reached by the parties (the "ALS Stipulation"). The ALS Stipulation pertinently stated:

> Come now the parties in the above styled case and respectfully request that the sworn report, the 1205 form, be withdrawn and in so doing respectfully show as follows; the undersigned arresting officer is the plaintiff in this case. As such the arresting officer completed a sworn report which was submitted to the Georgia Department of Driver Services pursuant to OCGA [§] 40-5-67.1[.] [I]t is now the intent of the undersigned arresting officer to withdraw this sworn report and suspend the administrative suspension. This withdrawal of this sworn report is based upon the agreement between the parties wherein the petitioner, Mr. Adams, agrees to enter a guilty plea to the underlying [DUI] charge . . . . The petitioner, Mr. Adams, further agrees that if he fails to enter a plea of guilty to the underlying [DUI] charge . . . on or before December 1, 2016, if he request any motions, preliminary hearings or any court action other than entering a guilty plea the petitioner waives his right to hearing under OCGA [§] 40-5-67.1 [(g) (1)] and authorizes the arresting officer to sign and file ex parte the affidavit below with this Court which shall immediately enter an order reinstating the administrative suspension without a hearing.

Adams ultimately failed to enter a guilty plea, and a criminal trial ensued. During the trial, the trooper testified to his encounter with Adams on the roadside as

4

previously summarized, and the State introduced and played for the jury an audio recording of the encounter captured on the microphone worn by the trooper. Additionally, the trooper testified about the ALS Stipulation reached with defense counsel, the ALS Stipulation was introduced into evidence and read to the jury, and the ALS Stipulation was sent out with the jury after jurors requested to see it during their deliberations. The State also introduced, through the testimony of a deputy sheriff from a different county, evidence of a prior occasion in which Adams had been arrested for DUI. After hearing all the evidence, the jury found Adams guilty of DUI less safe, failure to maintain lane, and following too closely. This appeal followed in which Adams challenges several evidentiary rulings by the trial court.[3]

1. In related enumerations of error, Adams contends that the trial court erred in permitting the State to introduce evidence of the ALS Stipulation because it was irrelevant, unfairly prejudicial, and could not be introduced as an admission against

---

[3] Contrary to OCGA § 5-6-37, Adams in his notice of appeal designated only certain portions of the record for *inclusion* in the record on appeal. See OCGA § 5-6-37 (providing, among other things, that the notice of appeal "shall set forth . . . a designation of those portions of the record *to be omitted* from the record on appeal") (emphasis supplied). The incomplete record in this appeal hampers our ability to review some of Adams's claims of error, as more fully explained below.

him in his criminal trial.[4] Adams further contends on the same grounds that the trial court should have granted a mistrial in response to the trooper's testimony about the ALS Stipulation.

Notably, however, Adams neither moved for a mistrial nor objected to the introduction of the ALS Stipulation on the grounds that it was irrelevant, unfairly prejudicial, and should not be treated as an admission. "To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived." (Citations and punctuation omitted.) *Sneed v. State*, 337 Ga. App. 782, 785 (1) (b) (788 SE2d 892) (2016). As we have explained, "where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court." (Citation and punctuation omitted.) *Volcey v. State*, 200 Ga. App. 881, 883 (2) (410 SE2d 36) (1991). For the same reason, an appellant is barred from raising a ground for mistrial on appeal that was never raised in the trial court. *Chenoweth v. State*, 281 Ga. 7, 12 (4) (b) (635 SE2d 730) (2006). Accordingly, Adams waived his argument raised for

_____

[4] Because Adams was tried in May 2017, we will address the evidentiary issues raised in this appeal under Georgia's new Evidence Code. See Ga. L. 2011, p. 214, § 101 (new Evidence Code "shall become effective on January 1, 2013, and shall apply to any . . . trial commenced on or after such date").

the first time on appeal that evidence of the ALS Stipulation was inadmissible as irrelevant and unfairly prejudicial and should not be treated as an admission against him.

Nor has Adams demonstrated that the admission of testimony and documentary evidence of the ALS Stipulation constituted plain error. See OCGA § 24-1-103 (d).[5]

> In regard to a plain-error review of a ruling on evidence, the analysis consists of four parts. First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised

---

[5] OCGA § 24-1-103 provides in relevant part:
(a) Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and:
(1) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . .
. . . .
(d) Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.

7

only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Thus, beyond showing a clear or obvious error, plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below.

(Citation and punctuation omitted.) *Wilson v. State*, 301 Ga. 83, 88 (2) (799 SE2d 757) (2017). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

Adams cannot show error, much less plain error, in the admission of evidence pertaining to the ALS Stipulation. The present case is controlled adversely to Adams by *Flading v. State*, 327 Ga. App. 346, 348-351 (1) (759 SE2d 67) (2014), where this Court upheld the admission of a similar written stipulation entered in an ALS hearing that was signed by defense counsel and a law enforcement officer, where there was no evidence of fraud or mistake in reaching the stipulation and no evidence that the defendant ever repudiated his counsel's authority to make the stipulation. We concluded in *Flading* that the trial court did not abuse its discretion by admitting the stipulation in the defendant's criminal trial because a stipulation entered in an ALS hearing that the defendant "would plead guilty to DUI in exchange for the return of

8

his driver's license [was] relevant to, though certainly not dispositive of, the charge that he was driving under the influence of alcohol," and its probative value was not substantially outweighed by its prejudicial effect. Id. at 351-352 (2).[6]

As in *Flading*, Adams does not claim fraud or mistake in entering the ALS Stipulation, and he never repudiated his counsel's authority to make the Stipulation.

> Accordingly, [Adams], having accepted the benefit of the stipulation in the form of the reinstatement of his license and having shown no fraud or mistake, acquiesced to his counsel's stipulation to plead guilty to the DUI and to the admissibility of the [ALS Stipulation] in a subsequent legal proceeding related to the DUI charge.

*Flading*, 327 Ga. App. at 351 (1). It follows that Adams has failed to demonstrate any error, plain or otherwise, in the admission of evidence pertaining to the ALS

---

[6] The written stipulation in *Flading* included additional language that "[t]he parties agree that a copy of this final decision may be admitted into any subsequent legal proceeding involving the charge as an admission by Flading of Flading's guilt or nolo contendere in exchange for the rescission of the administrative license suspension." (Punctuation omitted.) *Flading*, 327 Ga. App. at 348. However, our analysis in *Flading* did not turn on that particular sentence contained within the stipulation, but rather on "our general law regarding a party's admissions and stipulations in criminal proceedings" and on the relevancy of "Flading's stipulation that he would plead guilty to DUI in exchange for the return of his driver's license." Id. at 350 (1), 351 (2). Hence, the differences between the language of the written stipulations found in *Flading* and the present case are immaterial and do not affect the outcome here.

9

Stipulation, and thus has failed to establish any basis for reversal. See *Wilson*, 301 Ga. at 88 (2).[7]

2. Adams also appears to claim that the trial court erred by not permitting his defense counsel to testify about his conversations with the trooper regarding the ALS Stipulation because the "agreement did not contain an entire agreement clause and therefore parole evidence should have been admissible," including the testimony of his own counsel. But, "[t]o prevail on appeal, an appellant must show harm as well as error in the exclusion of evidence." (Citation and punctuation omitted.) *Clemens v. State*, 318 Ga. App. 16, 22 (4) (733 SE2d 67) (2012). Defense counsel was permitted to cross-examine the trooper about their conversations over the ALS Stipulation, and defense counsel never made a specific proffer reflecting how his testimony about the ALS Stipulation would have materially differed from the trooper's testimony. Consequently, pretermitting whether the trial court should have permitted defense counsel to testify about the ALS Stipulation, we conclude that

[7]Adams also argues that the trial court erred in allowing the prosecutor to make comments during closing argument about the ALS Stipulation that improperly attacked his character and integrity. Because Adams did not object to the prosecutor's comments at trial, he has waived review of these comments on appeal, and "the alleged errors here based on improper remarks during closing argument are not subject to review on appeal for plain error" under OCGA § 24-1-103 (d). *Gates v. State*, 298 Ga. 324, 328 (4) (781 SE2d 772) (2016).

Adams has failed to show any harm resulting from the exclusion. See id. (appellant could not show harm in the absence of proffer of witness's excluded testimony); *Gawlak v. State*, 310 Ga. App. 757, 758 (1) (714 SE2d 354) (2011) (no reversible error where appellant failed to make adequate proffer of proposed testimony).

3. Adams further contends that the trial court violated the continuing witness rule by allowing the ALS Stipulation to go out with the jury during its deliberations. During its deliberations, the jury sent a note to the trial court requesting to see the ALS Stipulation, which had not initially been sent out with the jurors. The trial court allowed the ALS Stipulation to be sent out to the jury in response to the note after first giving jurors a limiting instruction that "by sending this form out with you, I am not trying to emphasize this piece of evidence over any other evidence that you saw and heard."

Because Adams did not object on the basis of the continuing witness rule when the trial court allowed the ALS Stipulation to go back with the jury in response to the jurors' note, his claim of error is waived. See *Varner v. State*, 297 Ga. App. 799, 804 (4) (678 SE2d 515) (2009). And, assuming arguendo that plain-error review applies in this context, we conclude that the trial court did not commit plain error by allowing the ALS Stipulation to go back with the jury. As previously noted, reversal for plain

error under OCGA § 24-1-103 (d) is authorized only if the trial court's evidentiary ruling was erroneous, the error was obvious, the error likely affected the outcome at trial, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Wilson*, 301 Ga. at 88 (2). Adams cannot show that all of four of these prongs have been satisfied here.[8]

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.

(Citation and punctuation omitted.) *Rainwater*, 300 Ga. at 804 (2).[9] "These documents, which generally contain their makers' assertions of purported truths, are

---

[8] Because there was no plain error in this case, we need not decide whether allowing a particular document to go back with the jury in violation of the continuing witness rule is an evidentiary ruling requiring plain-error review under OCGA § 24-1-103 (d). See *Rainwater v. State*, 300 Ga. 800, 804 (2), n. 3 (797 SE2d 889) (2017).

[9] The continuing witness rule predates Georgia's new Evidence Code and the rule "was unaffected by the enactment of the new Evidence Code." *Rainwater*, 300 Ga. at 802 (2), n. 3.

12

ascribed evidentiary value only to the extent that their makers are credible." (Citation and punctuation omitted.) *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009). But, the continuing witness rule is inapplicable where the document at issue is "original documentary evidence" or where the document is non-testimonial in nature because it was not "a reduction of or substitute for [a] person's oral statements" or testimony. Paul S. Milich, Georgia Rules of Evidence § 19:8 at 762-763 (2016-2017 ed.). See, e.g., *Young v. State*, 292 Ga. 443, 446 (3) (b) (738 SE2d 575) (2013) (informant's letter could go out with jury because "the letter was not the reduction to writing of an oral statement, nor was it a written statement provided in lieu of testimony"); *Davis*, 285 Ga. at 348 (8) (letters, photographs, and death certificate were "original documentary evidence[] and were properly allowed to go out with the jury"); *Turner v. State*, 331 Ga. App. 78, 81 (2) (769 SE2d 785) (2015) (trial court did not err in permitting photographic lineup identification forms containing administrative information to go out with jury because the forms were "not equivalent to testimony"); *Ruffin v. State*, 333 Ga. App. 793, 795-796 (2) (777 SE2d 262) (2015) (witness-drawn diagram properly allowed to go back with jury because diagram was not the "functional equivalent of a deposition" and did not constitute "testimonial documentary evidence") (citations and punctuation omitted).

13

In the present case, we need not decide whether the trial court violated the continuing witness rule in permitting the ALS Stipulation to go out with the jury, because even if it was error to do so, the error did not rise to the level of plain error. Given that "this case is before us on plain error review, an actual legal error is not enough but must be clear or obvious and not subject to reasonable dispute." (Citation and punctuation omitted.) *Wilson v. State*, 291 Ga. 458, 459 (729 SE2d 364) (2012). "[A]n error is plain if it is clear or obvious under current law[, and] [a]n error cannot be plain where there is no controlling authority on point." (Citation and punctuation omitted.) *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016). In light of our precedent, it is subject to reasonable dispute whether a written stipulation like the one in this case, which contains an admission attributable to the defendant but no factual description of the underlying criminal offense, should be treated as the equivalent of testimony or a written confession by the defendant. Thus, whether the trial court violated the continuing witness rule by allowing the ALS Stipulation to go back with the jury is not clear or obvious under current law. See id. Consequently, the second prong of our plain-error analysis has not been satisfied, and the trial court's

decision to permit the ALS Stipulation to go back with the jury does not constitute plain error. See *Simmons*, 299 Ga. at 374 (2); *Wilson*, 291 Ga. at 460.[10]

4. Lastly, Adams maintains that the trial court erred by admitting evidence of a prior driving incident in which he was arrested for DUI. According to Adams, evidence of his prior driving incident was inadmissible because he was not convicted of DUI, it was not relevant to prove knowledge or plan, and its probative value was substantially outweighed by unfair prejudice. Adams has failed to show that the trial court abused its discretion in admitting evidence of the prior DUI incident.

Before trial, the State filed its notice of intent to introduce evidence of Adams's prior DUI arrest that occurred in June 2011 in White County. At a pretrial hearing,

---

[10] Adams also claims that the trial court erred in permitting the ALS Stipulation to go back with the jury without providing a "sufficient limiting instruction," but he does not articulate what specific limiting instruction should in fact have been given by the court. Because "mere conclusory statements are not the type of meaningful argument contemplated by our rules," Adams's claim regarding the trial court's limiting instruction will not be addressed. (Citation and punctuation omitted.) *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014). See Court of Appeals Rules 25 (a) (3), (c) (2). In any event, the final jury charge is not included in the appellate record, and thus it is impossible to tell whether any other instructions relevant to the ALS Stipulation were given by the trial court. See generally *Morgan v. State*, 204 Ga. App. 178, 180-181 (1) (b) (419 SE2d 313) (1992) (jury charges, including final jury charge and all limiting or cautionary instructions, must be read as a whole to determine whether error occurred). Given this incomplete record, Adams's argument regarding the limiting instruction provides nothing for us to review. See *Bollinger v. State*, 259 Ga. App. 102, 105 (2) (576 SE2d 80) (2003).

15

the prosecutor proffered the following summary of the anticipated testimony of the deputy with the White County Sheriff's Office who arrested Adams in the prior incident. On the day in question, the deputy initiated a traffic stop after observing a pickup truck driven by Adams repeatedly run off the shoulder of the road. The truck ran up on the curb and sidewalk as it came to a stop. The deputy then approached the truck and made contact with Adams, who smelled strongly of alcohol and had watery, bloodshot eyes and slurred speech. Adams initially said he had not had much alcohol to drink but then claimed that he had not been drinking at all. Adams agreed to take the HGN field sobriety test and exhibited six out of six clues of impairment. The deputy chose not to perform the walk-and-turn and one-leg stand field sobriety tests because Adams was too unsteady on his feet. After being arrested for DUI and read Georgia's implied consent notice, Adams refused the State-administered chemical test. Adams ultimately pled guilty to reckless driving. The State proffered the deputy's testimony about the June 2011 driving incident for the purpose of showing that Adams had acquired knowledge of the testing procedures used by the State to secure a DUI conviction and had developed a similar plan of refusal in the current case in an effort to avoid a DUI conviction. Following the prosecutor's proffer of the deputy's testimony and argument presented by the parties, the trial court held that

16

Adams's prior DUI incident was admissible for a relevant purpose under OCGA § 24-4-417 ("Rule 417") and that its admission would not be unfairly prejudicial under the balancing test of OCGA § 24-4-403 ("Rule 403").

(a) Adams first contends that Rule 417 (a) (1) requires that a criminal defendant have been convicted of DUI for the prior driving incident to be admissible. We are unpersuaded.

Rule 417 (a) (1) provides:

> In a criminal proceeding involving a prosecution for a [DUI] violation . . . , evidence of the commission of another [DUI] violation . . . on a different occasion by the same accused shall be admissible when . . . [t]he accused refused in the current case to take the state administered test required by Code Section 40-5-55 and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident[.]

Notably, Rule 417 expressly provides that "evidence of the *commission* of another [DUI offense] on a different occasion by the same accused shall be admissible," rather than evidence of a *conviction*. "Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant," and "where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends." (Citations and

17

punctuation omitted.) *Patton v. Vanterpool*, __ Ga. __ (Case No. S17A0767, decided Oct. 16, 2017). Accordingly, we conclude by choosing the word "commission" rather than "conviction" in Rule 417 (a) (1), the General Assembly intended for a prior driving incident to be admissible where there is evidence that a DUI was committed by the criminal defendant, even if the defendant was not convicted of that offense. This is consistent with our longstanding precedent "that there need not be criminal charges or conviction relating to a similar offense for it to be admissible." *Hassel v. State*, 257 Ga. App. 228, 230 (2) (570 SE2d 685) (2002). See *Johnson v. State*, 193 Ga. App. 618, 620 (388 SE2d 866) (1989). It is also consistent with our precedent establishing that a defendant's plea to a lesser offense in the prior case does not preclude the similar transaction from being admissible. See *Gonzalez v. State*, 213 Ga. App. 667, 668 (1) (445 SE2d 769) (1994); *Collins v. State*, 205 Ga. App. 341, 343 (2) (422 SE2d 56 (1992). The trial court thus did not err in admitting evidence of the prior DUI incident even though Adams was never convicted of that offense.

(b) Adams also claims that the prior DUI incident was inadmissible under Rule 417 (a) (1) because it was not relevant to prove knowledge and plan. We disagree.

A prior DUI is admissible under Rule 417 (a) (1) only if it is relevant to prove knowledge, plan, absence of mistake, or accident. *State v. Frost*, 297 Ga. 296, 301

18

(773 SE2d 700) (2015). However, Rule 417 is a "rule of inclusion" that creates a presumption in favor of the admission of such evidence, given that "Rule 417 (a) (1) speaks of evidence that 'shall be admissible.'" (Citation and punctuation omitted.) Id. Moreover, "[t]he admission of evidence is a matter which rests largely within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." (Citation and punctuation omitted). *Kim v. State*, 337 Ga. App. 155, 157 (786 SE2d 532) (2016).

The State proffered the deputy's testimony about the June 2011 driving incident for the purpose of proving that Adams had acquired knowledge of the testing procedures used by the State to secure a DUI conviction and had developed a similar plan to refuse consent in the present case as part of an effort to avoid a DUI conviction. In light of the State's proffer, the trial court did not abuse its discretion in finding that Adams's prior DUI incident was relevant for proving knowledge and plan. This is because

> [e]vidence of the prior DUI . . . could show that [Adams] had acquired knowledge about the means by which law enforcement officers determine whether and to what extent a driver is under the influence of an intoxicant, and such awareness likewise might help to explain a refusal in the present case to submit to a test.

19

*Gibbs v. State*, 341 Ga. App. 316, 318-319 (2) (800 SE2d 385) (2017), quoting *Frost*, 297 Ga. at 305. Accordingly, Adams's prior DUI incident was admissible for a relevant purpose under Rule 417 (a) (1). See *Frost*, 297 Ga. at 305; *Danley v. State*, 342 Ga. App. 61, 66 (4) (802 SE2d 851) (2017); *Gibbs*, 341 Ga. App. at 318-319 (2); *Monroe v. State*, 340 Ga. App. 373, 375 (2) (797 SE2d 245) (2017).[11]

(c) Lastly, Adams contends that the prior DUI incident was inadmissible under the balancing test set forth in OCGA § 24-4-403 ("Rule 403") because its probative

---

[11] At trial, the prosecutor asked the sheriff's deputy from White County to "please read as you did on the day in question the implied consent notice" that he read to Adams after arresting him in the prior DUI incident. The deputy then read to the jury Georgia's implied consent notice for suspects under age 21, which was the wrong version of the notice in light of Adams's age in June 2011. See OCGA § 40-5-67.1 (b) (1). On appeal, Adams argues that the deputy's recital of the wrong implied consent notice at trial rendered the prior DUI incident irrelevant to the present case to prove knowledge and plan and thus required the exclusion of Adams's prior DUI incident under Rule 417 (a) (1). But, as noted above, Rule 417 is a "rule of inclusion" that creates a presumption in favor of admissibility. (Citation and punctuation omitted.) *Frost*, 297 Ga. at 301. And even if Adams was read the wrong implied consent notice in the prior DUI incident, his refusal would still have some relevance in the present trial to showing that he knew that the State relied upon chemical testing to build a DUI prosecution and that he developed a plan to refuse consent in the instant case in an attempt to similarly thwart the State's efforts to convict him of that offense. Thus, Adams's argument on appeal is unpersuasive.

value was substantially outweighed by unfair prejudice.[12] Adams has procedurally waived this claim of error.

"A trial court's decision to admit other acts evidence [under Rule 403] will be overturned only where there is a clear abuse of discretion." *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015). And, in determining whether a trial court abused its discretion in conducting the Rule 403 balancing test, appellate courts consider the theory of the defense presented at trial. See *Jones v. State*, __ Ga. __ (2) (802 SE2d 234, 239) (2017) (taking into account "appellant's main defense" at trial in assessing whether trial court abused its discretion in finding that probative value of prior DUI was not substantially outweighed by unfair prejudice); *King v. State*, 338 Ga. App. 783, 786-787 (792 SE2d 414) (2016) (trial court did not err in finding that probative value of prior DUI was not substantially outweighed by unfair prejudice, where, "as

_____

[12]Rule 403 provides:
Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
"[W]hile neither this Court nor the Supreme Court has conclusively held that Rule 403 applies to Rule 417, we will presume without deciding that Rule 403 applies to Rule 417." (Citations and punctuation omitted.) *Miller v. State*, __ Ga. App. __ (1) (Case No. A17A0651, decided Oct. 18, 2017). See *Frost*, 297 Ga. at 301-302, n. 6; *Gibbs*, 341 Ga. App. at 320 (2).

the trial court explained in its order, the State needed this evidence to support its case and to counter [the accused's] defense").

However, as previously noted, in violation of OCGA § 5-6-37, Adams in his notice of appeal designated only certain portions of the record for inclusion in the record on appeal. The result is that the appellate record does not include, among other things, the opening statement and closing argument of defense counsel, and the portion of the record where the defense would have presented its case-in-chief or rested without presenting any such evidence.[13] Given this incomplete record, the defense theory of the case is unclear, which hampers our review of the trial court's application of the Rule 403 balancing test. See *Jones*, __ Ga. at __ (2); *King*, 338 Ga. App. at 786-787. "It is well established that the burden is on the party alleging error to show it affirmatively by the record and that where the proof necessary for determination of the issues on appeal is omitted from the record, the appellate court must assume that the judgment below was correct and affirm." (Citation and punctuation omitted.) *Bollinger*, 259 Ga. App. at 105 (2). See *Walker v. State*, 305 Ga. App. 607, 615 (4) (699 SE2d 902) (2010). Consequently, Adams's claim

---

[13] Given the incomplete record, it is unclear whether Adams elected to testify or present any defense witnesses.

22

regarding prejudice presents nothing for our review, and we affirm the ruling of the trial court. See id.

*Judgment affirmed. McMillian and Mercier, JJ., concur.*